Lee v. State.

---

## LEE v. THE STATE.

[No. 19,565. Filed April 26, 1901.]

CRIMINAL LAW.—*Circumstantial Evidence.*—*Review.*—Where the circumstances are of such a character that the jury might have reasonably drawn an inference of guilt of the accused, the question of guilt becomes one of fact for the determination of the jury and trial court, and is not open to review on appeal. *pp. 545, 546.*

SAME.—*Circumstantial Evidence.*—*Review.*—Where the circumstantial evidence is of such a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove the guilt of the accused and the other favorable to his innocence, it is not within the province of the Supreme Court to determine which inference ought to have controlled the jury. *p. 546.*

SAME.—*Failure to Produce Witness.*—*Presumption.*—Where the accused had it in his power to produce a witness whose testimony would or could explain a transaction, his failure to produce the witness raises a presumption that the testimony, if produced, would be unfavorable to him. *p. 548.*

From the St. Joseph Circuit Court. *Affirmed.*

*George Bradshaw,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for State.

JORDAN, J.—The first count of the information under which appellant was prosecuted charges him with having committed an assault and battery with the intent to rob. The second charges the actual commission of the robbery. Appellant was tried by a jury and convicted of the crime charged in the first count, and over his motion for a new trial was sentenced to be imprisoned in the state prison for an indeterminate period of not less than two nor more than fourteen years and was fined in the sum of $10. The only

156  541
156  539
156  582

156  541
157  303
157  383

156  541
158  81

156  541
159  81
159  103

156  541
160  307
160  551

156  541
161  290
162  526

156  541
163  878

156  541
164  276
164  277
164  482
164  668

156  541
165  401
165  473
165  478

156  541
f169  310
Continued

170  216
f170  632

156  541
f171  52
171  83
f171  103
f171  322

question presented and discussed by his counsel is that the verdict of the jury is contrary to both the law and the evidence. On the trial no evidence was introduced upon the part of the accused, and the truth of the evidence given by the State is not disputed by appellant, but its sufficiency to support the judgment is the only matter controverted.

The evidence relied upon by the State for conviction, so far as it went to connect appellant with the commission of the crime, was wholly circumstantial. The facts or circumstances in the case as disclosed by the record are substantially as follows: On October 24, 1900, in the city of South Bend, St. Joseph county, Indiana, Frank Gooley, the prosecuting witness, was conducting a small grocery store which was situated at the junction of Cushing street, Rex street, and Portage avenue. An electric arc-light hung in the center of the street immediately in front of the grocery store and but a few feet distant from the front door leading into the store, and on the night of the alleged robbery this lamp was lighted. The front part of the store was, in the main, of glass, and a person could stand outside near this arc-light and see into and over the entire storeroom. There were two doors to the store, one in the front and the other in the rear. South of the store on Cushing street there was a barn or stable, the door of which was about sixty-five feet from the rear door of the store. Gooley's residence was situated about fifty feet in the rear of his store, and from the back door of his residence to the barn in question the distance was about twenty feet. Along the east side of the store was a counter and on the front end thereof there was a case in which cigars were kept for sale. Close to this cigar case was the money-drawer. On the night of October 24, 1900, appellant, who as it appears did not reside in South Bend and who was a stranger to Gooley, came to the grocery store of the latter about fifteen or twenty minutes before 8 o'clock. Before entering the store by the front door he stood for a short time and looked in and then entered and walked to

the cigar case and asked for a cigar, and after selecting a five-cent cigar he handed Gooley a ten-cent piece of money, and Gooley opened the money-drawer and handed appellant the change coming to him. When Gooley opened the money-drawer it appears that appellant looked over towards the drawer. He lit the cigar which he had purchased, and inquired of Gooley the time of night. The latter took out of his pocket a gold watch, and upon giving appellant the time the latter remarked that he thought Gooley's watch was wrong, and then left the store. Two persons who were accustomed to spend their evenings at Gooley's grocery store, Foster and Thomas, were in the store when appellant came in and during the time he was in the store, and they remained at the store until it was closed for the night. A number of customers also came in the store that evening between 6 and 8 o'clock. After appellant left the store he went northwest on Portage avenue. In about fifteen minutes after he left, or near about 8 o'clock, he returned to the vicinity of the store and for a few minutes he was seen near the electric light on Rex street looking into the store; after which he turned away and started back in the direction from which he came. While standing looking into the store at the time last mentioned, appellant had something in his hand like a cane or umbrella, but what it actually was the evidence does not disclose. Foster upon leaving the store for his home at the time it was closed by Gooley saw appellant standing by a telephone pole about a block or less away from the store and near a street-car line. A colored man also identified upon the trial as appellant was seen walking away from the direction of Gooley's store about half past 8 o'clock on the night in question, and at that time he had something in his hand which he used in walking for a cane. The evidence discloses that Gooley usually closed his store about 8 o'clock at night unless he was detained by customers. On the night in question before closing the store he counted the money in his money-drawer and put it

in his pocket, then turned out all of the lights except one and started to leave the store by the rear door, but before doing so he looked at his watch and saw that the time was twenty minutes past 8 o'clock. He immediately left by the rear door, locked it, and went to his barn in the rear of the store intending to lock the barn, and just as he took hold of the knob of the barn door to close it some person in the dark struck him down. At the time he was thus assaulted he had on his person $15 in money and a gold watch of the value of $25 dollars. After being thus struck down, as stated, he laid unconscious upon the ground until about 9 o'clock. After he was knocked down it appears that he was robbed of the money and watch heretofore mentioned, and also the keys and other effects which he had in his pockets were taken. It is shown to have been but a minute or two after Gooley left the store until he was assaulted. It was his custom to leave his store by the rear door after closing for the night and go to his residence situated as heretofore stated. On the evening in question two colored men were seen about 7 o'clock hitching a horse which was attached to a buggy at a point near the water-works in said city, which place was about a half mile from Gooley's store and was rather an unusual place for hitching horses. These two colored men were heard talking, by a witness, in a low tone, and their actions were such as to attract the attention of the witness. Upon leaving this place they went up into the city in the direction of Gooley's store. Appellant, together with another colored man by the name of Taylor, was seen to drive away in a buggy from a livery-stable in South Bend sometime between 6 and 7 o'clock, and they drove in the direction or towards the water-works. The superintendent or captain of the city police seems to have been notified thereafter that two colored men had hitched a horse near the water-works, and as the officers had been on the lookout for a horse that had been stolen or taken, the superintendent directed two policemen to go to the water-works where the

horse was reported to be hitched and watch for the two men and require them to give an account of themselves. This direction was given before any notice of the robbery had been given to the police. The officers detailed went to the place where the horse was hitched and waited there until a few minutes of 9 o'clock, when appellant and his companion came from the direction of Gooley's store, and got into the buggy, whereupon the officers surrounded them and informed them that they were policemen, and demanded that they give an account of themselves. One of the men replied in response to this demand, for the officer to "get away", that they had not done anything, and that they belonged in Niles, Michigan, and informed the officers that if they wanted any references to telephone to Niles to a livery-stable—the witness thought they said Sheperd's livery-stable, at which stable, they said, they had procured the horse and buggy. One of the colored men, either appellant or his companion, the officers were not able to tell which, said in the presence of the other: "I won't be searched." After the officers let them go, they drove north towards Niles.

Appellant, as previously stated, virtually admits or concedes the truth of all of the evidence given by the State, hence it follows that he must be held to admit all inferences that the jury might have logically and reasonably drawn from such evidence. His counsel recognize the rule that this court on appeal will not undertake to weigh the evidence in a particular case, but it is asserted that appellant does not request that the judgment be disturbed upon the weight of the evidence, but wholly upon the failure of the evidence to sustain it. It is insisted that the circumstances in the case can furnish no reasonable basis for the theory of the guilt of the accused.

A review and relief from an error of fact into which a jury upon a trial of a cause may have been led, is, under

the law of this State, confined alone to the trial court, and it is only when there is an absence of evidence to support some fact or facts essential or material to the judgment that the question arising in respect to such facts becomes a matter of law and subject to be reviewed and corrected on appeal to this court. The fact that the evidence upon which the judgment of the trial court rests may be said to be weak or unsatisfactory is not available on appeal, for if there is evidence to sustain the judgment in every material respect we are bound to accept it, and are not authorized to invade the province of the trial court and disturb the judgment upon the question of the weight of the evidence. *Deal* v. *State,* 140 Ind. 354, and cases there cited. Consequently, in the case at bar, even though it may be asserted that the circumstances upon which the State relies for a conviction are weak, or possess but little weight, still if they are of such a character as the jury might therefrom have reasonably drawn an inference of the guilt of the accused, the question then in respect thereto becomes one of fact, and if an error was committed by the jury upon that question it ought to have been corrected by the trial court, as, under the rule to which we have referred, it is not open to a review and correction on appeal to this court. Where the circumstantial evidence in a case is of such a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove the guilt of the accused, and the other favorable to his innocence, then, under such circumstances, it is not within the province of this court to determine which inference ought to have controlled the jury. The question in such a case manifestly becomes one of fact for the decision of the jury, subject to review by the trial court, and is not, as previously said, open to review on appeal. *American Varnish Co.* v. *Reed,* 154 Ind. 88; *McCaughey* v. *State, ante,* 41.

In a criminal prosecution where circumstantial evidence is relied upon to convict, the proximity of the defendant

to the place or scene of the crime about the time of its commission, in connection or along with other circumstances, is usually shown and considered to establish by a necessary or reasonable inference the presumption of his participation in the criminal act. Burrill, Cir. Ev., p. 368.

To recapitulate; by the facts in this case it is disclosed, among other things, that appellant was near the scene of the crime a short time before and also about the time of its commission. His acts and those of Taylor, his associate, upon the night in question, are seemingly, at least, under the circumstances, unusual or somewhat outside of the ordinary. When he first went to the store in question, he is shown to have stood for some time under or near the electric light looking into the store before entering. After he purchased the cigar and had observed the money-drawer, and had also, by asking the time of night, caused Gooley to disclose the fact that he had a gold watch about his person, he left the store, but in a short time prior to the closing thereof he returned and again stood looking into the store. Subsequently, near the time that the store is shown to have been closed for the night, he was seen standing at a point near the store with a cane or something of that character in his hand. He and his companion, as it appears, had placed the horse and buggy which they said they had procured at Niles in a livery-stable in the city of South Bend, and sometime between 6 and 7 o'clock they removed the buggy from the livery-stable and drove to a point near the water-works and there hitched the horse. This point, it appears, was an unusual one for hitching horses. At this place they were seen and heard talking in a low tone, after which they left the horse and buggy and went in the direction of Gooley's store, and in a short time after he was assaulted they returned to the buggy, and upon being accosted by the officers who had been detailed to go to the place and watch them, and who demanded or asked them to give an account of themselves, one of them, either appellant or his

companion, told the officers to leave, saying, in substance, that "we" or "I" have done nothing, and one of them further saying that he would not be searched.

It is true that under the statute it was wholly optional with appellant in respect to offering himself as a witness in his own behalf upon the trial and thereby explain or in some manner rebut the evidence introduced by the State, and his failure to testify as a witness under the prohibition of the statute could not in any manner be commented upon or considered at the trial, but still, for aught appearing to the contrary, he might have produced the testimony of his companion, Lee Taylor, who as the evidence shows was with him on the night in question, and by his testimony he might have given a satisfactory explanation of his conduct and actions upon that night. The defense seems, however, to have offered no excuse or to have given no reason whatever for not producing in some manner the testimony of this witness, hence, under the circumstances, the failure upon the part of appellant to produce the testimony of Taylor may be said to raise a presumption that such testimony, if produced, would have been unfavorable or prejudicial to him. The general prevailing rule of the law, to which there are well recognized exceptions, is that where either the accused in a criminal prosecution or a party in a civil action has it peculiarly within his power to produce evidence or a witness or witnesses whose testimony would or could explain a transaction, the fact that he does not do so, or at least makes no effort to procure the testimony of the witness, raises a presumption that the evidence or the testimony, if produced, would be unfavorable or prejudicial to him. *Hinshaw* v. *State,* 147 Ind. 334; 2 Ency. Pl. & Pr. 714, and cases there cited; Starkie on Ev. (8th Am. ed.), p. 746; Lawson on Presumptive Ev. p. 634; 1 Greenleaf Ev. (16th ed.), §195b; *Kirby* v. *Tallmadge,* 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; *Graves* v. *United States,* 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021; *People* v.

*Hovey,* 92 N. Y. 554, 559; *Commonwealth* v. *Clark,* 14 Gray 367.

We may therefore assume, as nothing appears to the contrary, that the jurors gave consideration to such presumption, as it appears in this case they were authorized to do, in making up their verdict. The consideration of such a presumption in criminal cases, says the author in Starkie on Evidence (8th Am. ed.), p. 746, "frequently gives a conclusive character to circumstances which would otherwise be of an imperfect and inconclusive nature." The circumstantial evidence in this case, standing unrebutted as it does, is such as may reasonably create a presumption against appellant in respect to his participation in or connection with the crime charged, and if upon the consideration of all of the evidence the jurors were satisfied of appellant's guilt, beyond a reasonable doubt, it was their duty to convict, and if they erred upon any questions of fact, it was the duty of the trial court to correct it by granting appellant a new trial. Upon any view of the case, however, it may be asserted that there is no such absence of evidence upon any essential fact in the case as to present to us a question of law, and hence, under the rule of appellate procedure heretofore mentioned, we are not permitted to disturb the judgment.

Counsel for appellant in support of his contention refers to *Hamilton* v. *State,* 142 Ind. 276. Possibly this case may be said, to an extent at least, to support his contention, but so far as anything asserted or decided in that case is in conflict with this opinion, it must be considered as overruled.

Judgment affirmed.