SCHMITTLER v. STATE OF INDIANA

[No. 28,620.   Filed June 22, 1950.]

Emmert, C. J., and Gilkison, J., dissent with opinions.

*Theodore Lockyear* and *James D. Lopp*, both of Evansville, for appellant.

*J. Emmett McManamon*, Attorney General, and *Frank E. Coughlin*, Deputy Attorney General, for appellee.

STARR, J.—This is an appeal from a judgment of the Posey Circuit Court denying appellant's petition for a writ of error coram nobis against the State of Indiana, appellee herein. The appellant has assigned as error that the decision is contrary to law.

The record discloses that the appellant filed his verified petition for the writ and that the appellee in due course filed its answer thereto which put the cause at issue.

The allegations of appellant's petition are substantially as follows: That on March 30, 1949, an affidavit in two counts was filed in the Posey Circuit Court charging appellant in count one thereof with second degree burglary, and in count two thereof with grand larceny. That appellant was jointly charged in said affidavit with one Jack Jones and one Cyril Broster. That this affidavit charged appellant and his co-defendants with the commission of the offenses on or about March 28, 1949. That on April 1, 1949, appellant entered his plea of guilty in said Circuit Court to each count of the indictment upon the advice of Jesse E. Wade, a member of the bar of said court. That the second count of the affidavit was dismissed at the time the plea of guilty was entered; that upon said plea the court sentenced appellant on the first count to the Indiana Reformatory, which sentence appellant is now

serving. That appellant was arrested March 29, 1949, by members of the Indiana State Police at New Harmony, Indiana, and that at that time said officers illegally searched appellant's automobile without a search warrant and obtained evidence which they thereafter threatened to use against him upon the trial of the cause which they informed appellant they would institute against him. That said officers did not at any time fully inform appellant of the nature of the accusation against him nor advise him of his rights, including his right to counsel, and did not permit him to communicate with his parents; nor did said officers take him before the nearest magistrate to be charged and informed as provided by law, but instead transported him to the State Police Post at Jasper, Indiana, where they subjected him to questioning for several hours and finally induced him to sign a paper purporting to be a confession which they threatened to use against him upon the trial of the cause which they informed him they would institute in Posey County against him. That from the time of his arrest, and during the time he was being transported to and from Jasper, and while there, he was denied access to an attorney and to his parents. That said officers, on March 31, 1949, returned him to Posey County and turned him over to the sheriff of that county who then permitted him to contact his parents who were informed that if they would make good the property alleged to have been taken that the charges would be dropped. That his parents then reimbursed the owner for his alleged loss; that his mother, on the night of March 31, 1949, visited him at the county jail but his parents did not at that time employ counsel as they thought the case was to be dropped, and for the same reason his father did not visit him or put in his appear-

ance when he entered his plea. That the appellant, about fifteen minutes before he was called upon to enter his plea, availed himself of the services of said attorney Jesse E. Wade who had been previously engaged to represent one of appellant's co-defendants. That up until the time of entering his plea appellant had no opportunity to discuss with any person, including his attorney, his predicament and his position with reference to the criminal charges against him, and had not been advised of his constitutional rights. That said attorney was paid by appellant's mother the sum of $5 for his services. That when he was called upon to plead it was falsely rumored in the court room that he was wanted by the law enforcement officers of Illinois, which rumor was believed and indulged in by the said Wade; that he pleaded guilty on the advice of his attorney, believing, by reason of the representation made to him by his attorney and the police officers then in attendance in court, he would be given a suspended sentence because of his previous good record and character; that at the time of entering his plea he was twenty-one years of age, had never been in any trouble, had never been in court, and was unfamiliar with his right in the premises and to be heard and to present evidence in mitigation of punishment; that although several persons were in the court room, including his mother, when he pleaded guilty, who could have testified as to his good character, his attorney failed to call any of them or request the court to hear any of them, or other evidence on the question of mitigation of punishment and the propriety of a suspended sentence.

This petition is argumentative throughout. Stripped of all excess verbage it merely alleges and sets out that appellant, at the time of entering his plea of guilty, was not adequately represented by counsel, and

that his attorney did not advise him of his "constitutional rights," although no specific failure in that regard is relied upon. It is an attempt to show that Mr. Wade made no serious effort to advise and defend the appellant and that his services were merely perfunctory.

The evidence in this cause consisted of the verified petition of appellant which was introduced into evidence by him. Appellant also introduced what purports to be an exhibit to his petition. This exhibit sets out the minutes and records of the doings of the trial court when appellant and his co-defendants entered their pleas, together with the statements of the court and counsel made at that time. This record is in words and figures as follows:

"AND BE IT REMEMBERED THAT: On April 1, 1949, before the Honorable James H. Blackburn, sole Judge of said court the following proceedings were had in said cause to-wit:

Comes now the defendants Sam E. Schmittler, Jack Jones and Cyril Broster and their attorney Jesse E. Wade and comes the State of Indiana by Francis E. Knowles, Prosecuting Attorney and proceedings were as follows:

BY THE PROSECUTING ATTORNEY: THE ARRAIGNMENT OF THE FIRST COUNT.

Q. State your Name?
A. Sam E. Schmittler.
Q. Do you plead guilty?
A. Yes.
Q. State your name?
A. Jack Jones.
Q. How do you plead?
A. Guilty.
Q. State your name?
A. Cyril Broster.
Q. Do you plead guilty?
A. Yes.

PROSECUTING ATTORNEY READS THE SECOND COUNT:

Q. Sam E. Schmittler how do you plead to this count?

A. Guilty.

Q. Jack Jones how do you plead?

A. Guilty.

Q. Cyril Broster how do you plead?

A. Guilty.

BY THE PROSECUTING ATTORNEY:

All of the defendants plead to both charges of burglary in the second degree and grand larceny.

BY THE COURT:

Q. State your name?

A. Sam E. Schmittler.

Q. How old are you?

A. Twenty-one.

Q. You are represented by an attorney, Mr. Jesse E. Wade?

A. Yes, sir.

Q. Are you entering this plea of guilty of your own free will and choice?

A. Yes, sir.

Q. You have not been over-persuaded to enter this?

A. No, sir.

Q. No threats of any kind used?

A. No.

Q. How old did you say you are?

A. Twenty-one.

Q. What is your name?

A. Jack Jones.

Q. You are charged in this affidavit for second degree burglary and grand larceny?

A. Yes.

Q. You enter this plea of guilty with the advice and consent of your attorney?

A. Yes.

Q. No one has over-persuaded you to do it?

A. No.

Q. How old are you?

A. Eighteen.

Q. When were you eighteen?

A. February 25th.

Q. Your name is what?

A. Cyril Broster.

Q. How old are you?

A. Nineteen.

Q. You are represented by an attorney, Mr. Jesse E. Wade?

A. Yes.

Q. You are entering this plea of your own free will and choice?

A. Yes.

Q. Has anyone threatened you or persuaded you to enter this plea of guilty?

A. No.

Q. Have you ever been in trouble before?

A. No.

Q. You live in Illinois?

A. Yes.

Q. I will ask you Mr. Schmittler, have you ever been in trouble before?

A. No.

Q. This is your first time of being arrested?

A. Yes, sir.

Q. Mr. Jones have you ever been arrested before?

A. No.

Q. Not for any offense of any kind?

A. No, sir.

BY MR. WADE:

This boy is an orphan and the other two boys are sons of widows and their mothers are here in court

and they tell me that their children have never been in trouble before, they have been good boys and that there is a good job waiting for both of the boys with the prospect of a job for the other one if the court can see fit to suspend the sentence or parole them. If the court could see fit, it being their first offense, they were on a wild-goose chase through New Harmony and it has been done or ar-ranged to be done, the money will be restored there will be no loss to him in this matter if the court could see fit to take it under advisement or suspend the sentence. They belong in Illinois, I don't know how it could be arranged one of the officers in Illinois offered to be a sponsor for one of the boys. This is their first offense, they have never been in trouble before, one of the boys is an orphan and the other two sons of widow women. They did it and there is no excuse for the fact they did do it but perhaps it would be a sore lesson to them.

BY THE COURT:

Here is a plea of guilty to both charges.

BY MR. WADE:

It is really one case.

BY THE PROSECUTING ATTORNEY:

It is one affidavit in two counts. I will dismiss the second count for grand larceny. It is a second degree burglary case. I will dismiss the second count and if the court felt so it will be a shorter term.

BY THE COURT:

The State dismisses as to the second count. The duty is clear regardless of how one pleads. It is the duty of the court to uphold the law and see that the respect of the law is not brushed aside or destroyed. It is not pleasant but what assurance can we have they will not repeat it again, I think the only thing this court has a right to do under these conditions is to inflict the penalty and on their plea of guilty, it is adjudged by the court that the defendants are guilty as charged and that they suffer the penalty of burglary in the second degree by imprisonment

of not less than two years nor more than five years in the Indiana Reformatory and disfranchised for two years and pay the cost."

In addition to the evidence introduced by the appellant the evidence consisted of the affidavits of four persons introduced on the part of the appellee, which affidavits were substantially as follows: Francis E. Knowles, in his affidavit, stated that he was the Prosecuting Attorney for the Eleventh Judicial Circuit. That as such Prosecuting Attorney he did, on the 30th day of March, 1949, acting upon the information given him by state patrolman John H. Redman and detective Wendolin G. Opel, of the Indiana State Police, and also after having examined the typewritten admission and confession signed by the appellant in which the appellant stated that he, in the company of one Jack Jones and one Cyril Broster, had broken and entered into a Mobilgas filling station in New Harmony, Indiana, on March 28, 1949, prepare an affidavit in two counts charging these three persons with grand larceny and with burglary in the second degree, which affidavit was signed and verified by the owner and operator of the said station. That thereafter he arranged with the Judge of the Posey Circuit Court to have the said defendants arraigned on the 1st day of April, 1949. That the arraignment was purposely delayed until that date to permit the parents and relatives of the defendants to be present in order that the defendants could have the benefit of the counsel of such relatives, and that said date was the most convenient for these relatives to appear in court. That in his capacity as Prosecuting Attorney he advised various ones of the relatives that restitution to the prosecuting witness or the making good of the property alleged to have been taken would not influence the state to dismiss the charges against

the defendants. That he also advised the relatives that if they wished to pay the prosecuting witness for the damages sustained by him the state would have no objection to having such repayment pointed out to the court for whatever effect such fact would have upon the court's attitude toward mitigation or suspension of sentence upon a finding of guilty.

The affidavit of Wendolin G. Opel stated that he was a detective in the Indiana State Police stationed at Jasper, Indiana. That on the 29th day of March, 1949, between the hours of three and four o'clock in the afternoon the appellant, aged 21, was brought to the Indiana State Police Post situated at Jasper, Indiana, at which time and place this affiant met and talked to the appellant for a period of not more than three minutes concerning the breaking and entering of the above mentioned gas station in New Harmony. That at that time appellant was advised of his constitutional rights and there were no threats, promises or inducements made to him to obtain a confession or admission. That the appellant then and there voluntarily confessed that on the 27th day of March, 1949, he, together with Jack Jones and Cyril Broster drove to the town of New Harmony and there broke into and entered said Mobilgas station and took and carried away one car battery and $20.00 in United States currency. That following the oral admission the appellant executed a written statement concerning the breaking and entering of the Mobilgas station implicating the said Jones and Broster as accomplices. That prior to the confession and admission of the appellant neither this affiant nor any other police officers present had any knowledge of the fact that Jones and Broster were involved in the breaking and entering. That the appellant signed the written statement in the presence of one Charles W. Lucas,

Clerk of the Indiana State Police at the Jasper Post, this affiant and one John Redman, a patrolman of the Indiana State Police. That neither this affiant nor any other police officer threatened to use the statement against appellant at any time nor was there any mention made concerning the use of the statement upon any subsequent trial. That the appellant, in the presence of this affiant, Lucas and Redman, read the statement and examined the same before he signed it, and before signing the appellant wrote at the bottom of the statement: "I have read this and it is true."

The affidavit of Albert Sturgis sets out the following facts: That he was, on the 29th day of March, 1949, and still is, the Sheriff of Posey County, Indiana. That he received into his custody from state patrolman, John H. Redman, the appellant, at approximately six o'clock P. M. on the 29th day of March, 1949, and at that time placed the appellant in the Posey County jail located in Mount Vernon, Indiana. That on the next day, accompanied by patrolman Redman and detective Opel of the Indiana State Police, he went to Crossville, Illinois, and met the Sheriff of White County, Illinois, and all four of them then journeyed to Grayville, Illinois, where Jones and Broster were taken into custody. That these two co-defendants then were taken to New Harmony, Indiana, where they were turned over to the affiant, and that he thereupon brought the two boys to the jail at Mount Vernon, Indiana, at approximately 5:30 P. M. on March 30, 1949. At no time did Sheriff Cole state that either the appellant or Broster was wanted by the White County authorities, and at no time did the affiant understand that either the appellant or Broster was wanted at any place or in any jurisdiction for any alleged crime other than the one with which they were charged in the Posey Circuit Court. That the

mother of appellant came to the Posey County jail on the night of March 31, 1949, and was permitted to see and talk with appellant, and that he did not at any time state to the parents of said appellant that if they would make good the property alleged to have been taken the charges against appellant would be dropped, and that he at no time heard such promise or similar promise made to the appellant or the parents of said appellant.

Next the affidavit of John H. Redman was admitted into evidence. In his affidavit he stated that on the 28th day of March, 1949, he was a patrolman in the Indiana State Police. That on the evening of that day, acting upon information, he approached the appellant at his automobile which was parked at the curb on North Street in the town of New Harmony and at that time requested appellant to permit this affiant to view the battery in his automobile. That appellant immediately gave his consent and immediately opened the door of the automobile and raised the front seat thereof, thereby exposing the battery to the view of this affiant. That appellant then stated that it was not his battery and asked who had placed the battery in the automobile. That the owner and operator of the Mobilgas station was called to the scene and identified the battery as the one which had been taken at the time of the breaking and entering of his station, whereupon this affiant arrested the appellant and placed him in the New Harmony jail where he remained until the next morning. That the following morning this affiant transported this appellant to the State Police Post at Jasper, Dubois County, Indiana, for the purpose of fingerprinting him and taking photographs. That upon his arrival at the Jasper Post the appellant admitted and confessed that he, together with his co-defendants, on the 27th

day of March, 1949, broke into and entered the gas station at New Harmony and carried away the battery and $20.00 in currency. That before making his statement appellant was advised of his constitutional rights; that no threats, promises or inducements were made to him in obtaining the confession. That appellant made his admission within a few minutes after his arrival at the police post, and at no time did any officer threaten to use this statement against appellant at any time or upon any subsequent trial. That before signing the statement the appellant read it and in his own handwriting wrote thereon: "I have read this and it is true." That following the signing of the statement the appellant was returned to Posey County and placed in the custody of the sheriff of that county and was held in the Posey County jail. That he was turned over to the Sheriff of Posey County at the jail at approximately six o'clock P. M. on the 29th day of March. That at no time while the appellant was in the custody of this affiant did he request or ask permission to consult an attorney or to contact or see any members of his family.

Thus a question of fact was presented. It seems to us that all of the appellant's contentions were directly met and controverted except the assertion that the appellant's attorney did not advise him of his constitutional rights and that he failed to adequately represent the appellant. The assertions that he had no opportunity to discuss matters with his attorney and that the attorney did not advise appellant of his constitutional rights are not expressly denied, but it does not necessarily follow that the evidence furnished no conflict as to that, or that the trier of the facts was required to accept appellant's statement in that regard as true. We have repeatedly said that the

trier of the facts may not disregard or refuse to consider uncontradicted testimony which is all one way, *Riley* v. *Boyer* (1881), 76 Ind. 152; *Roe* v. *Cronkhite* (1876), 55 Ind. 183, but it is not always necessary to accept such testimony as true simply because it is not directly contradicted or denied by other testimony. The trial court had the right to consider the interest of the appellant, the probability or improbability of his assertions in the light of proved or admitted facts, his apparent forthrightness or lack thereof, the conditions and compulsions under which he testified, his wishes and desires and the probable effect upon him of a favorable or unfavorable decision. *Walton* v. *Wilhelm* (1950), 120 Ind. App. 218, 91 N. E. 2d 373. If, taking into consideration these and other factors, the uncorroborated statements of this appellant did not carry conviction, we think the court was entitled to disbelieve his assertions that his constitutional rights were not explained to him by his attorney. *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Cazak* v. *State* (1925), 196 Ind. 63, 147 N. E. 138; *Cotner* v. *State* (1909), 173 Ind. 168, 89 N. E. 847; *Freese* v. *State* (1903), 159 Ind. 597, 65 N. E. 915; *Wm. P. Jungclaus Co.* v. *Ratti* (1918), 67 Ind. App. 84, 118 N. E. 966. There are occasions when testimony cannot be directly controverted, as would be the case if a convicted man's former attorney had died, was otherwise unavailable, or did not recollect the facts. If the uncorroborated statements of a man so vitally interested in the result must be accepted as true merely because such assertions have not been expressly denied, and when other facts and circumstances point in a different direction, it would obviously furnish a ready avenue of escape for any and all who had been convicted and imprisoned.

As to whether the record reveals that appellant was not adequately represented, it would appear to us that the appellant was guilty as charged. He does not assert otherwise. His chief complaint seems to be that his attorney did not do everything possible to mitigate his punishment. From the record recited it would not appear to us that the attorney failed in this regard, nor does it appear that he acted unwisely in the manner in which the matter was presented. The attorney advised the court that the appellant had never been in trouble before and that it was his first offense. He sought leniency for the appellant and succeeded in having the more serious count of the affidavit dismissed after the appellant had pleaded guilty to it. There is such a thing as strategy in the presentation of a lawsuit, and the actions, conduct and efforts of the attorney and the advice he gives his client must be judged in the light of the situation as it appeared to him at the time, and not in the light of the results actually achieved. It may well be that the attorney concluded he could best serve his client by following the method which he adopted and pursued. Certainly we cannot say on this record, and in the light of the facts as they then existed and appeared to the attorney, that his method of approach was so unskillful or inadequate as to afford the appellant any just cause for complaint.

The record discloses that the appellant, at the time of entering his plea of guilty, was represented by counsel and stated to the trial court that he entered his plea of his own free will, acknowledged that he was represented by counsel, and that in so making his plea he had not been over persuaded or threatened in any manner. All of these matters tend to contradict the allegations of appellant's petition and would support the inference that he was not coerced

into making his plea, and was acting on advice of counsel of his own choosing. The same judge who heard this petition accepted appellant's plea of guilty. It was his right, subject to review, to determine when appellant was telling the truth. *Bolton* v. *State* (1945), 223 Ind. 308, 60 N. E. 2d 742. Furthermore, there is no contention that appellant's counsel was incompetent or that he was not fully conversant with all the facts in the case. In fact it appears that this attorney by previous employment was also representing one of appellant's co-defendants. This court knows that where counsel is conversant with all the facts it would require a very short time in a case such as this for him to arrive at his conclusion as to what should be done.

It must be presumed that appellant's attorney discharged his full duty and it should require strong and convincing proof to overcome this presumption. *Fambles* v. *State* (1896), 97 Ga. 625, 25 S. E. 365. It will be noted that appellant, upon whom rested the burden of proof, did not produce his attorney's affidavit or testimony. Here the appellant had it peculiarly within his power to produce this witness whose testimony could or would explain the entire transaction. The fact that the appellant did not produce or at least make an effort to produce the testimony of this witness raises the presumption that this evidence or testimony if produced would have been unfavorable or prejudicial to him. From this failure the court may have drawn the inference that the attorney would not have corroborated the appellant. *Lee* v. *State* (1901), 156 Ind. 541, 60 N. E. 299; *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157; *Carty* v. *Toro* (1944), 223 Ind. 1, 57 N. E. 2d 434.

From all the evidence and the record in this case the trial court was justified in finding that appellant

was represented by competent counsel of his own choosing throughout the proceedings and made his plea voluntarily, and by making such plea waived any question of deprivation of rights. *Irwin* v. *State* (1942), 220 Ind. 228, 238, 41 N. E. 2d 809. Having so found it would compel the trial court to reject appellant's contention that his plea was made under a misapprehension of his legal rights or supposed defenses. See *U. S.* v. *Sturm* (1950), 180 F. 2d 413.

It is true that it has been many times said by this court that where a motion is made by the defendant during the term that the plea is made or judgment rendered asking leave to withdraw a plea of guilty on the ground that the same was made without counsel, which motion is supported by affidavits and the material parts thereof are not controverted, that such uncontroverted statements will be taken as true. *Myers* v. *State* (1888), 115 Ind. 554, 18 N. E. 42; *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N. E. 220; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Kuhn* v. *State* (1944), 222 Ind. 179, 52 N. E. 491. This rule was also applied in *Cassidy* v. *State* (1929), 201 Ind. 311, 168 N. E. 18. There, however, the court erroneously treated the application to set aside the judgment and withdraw the plea as a motion when in fact it was a coram nobis proceeding. This rule is also applied in interlocutory proceedings such as injunction and receivership cases. See *Kuhn* v. *State, supra.* The matter now before us is not a *motion* to vacate a judgment and for leave to withdraw the plea of guilty made without counsel, but on the contrary it is, so far as the rules of evidence by which it is governed are concerned, an *independent action brought upon the theory of in-*

*adequate representation by counsel. Irwin v. State, supra,* p. 248; *Kuhn v. State, supra* (dissenting opinion p. 192). We think the rules above stated as to the consideration of evidence in a civil case, rather than those which have been applied in connection with a motion for leave to withdraw a plea of guilty made without counsel, must of right and necessity govern the decision of this case, both in the trial court and in this court, even though it has been ingrafted on our procedure that a case such as the one before us may be tried on affidavits. See *State ex rel. Vonderschmidt v. Gerdink* (1946), 224 Ind. 42, 64 N. E. 2d 579.

For the reasons herein stated the judgment is affirmed.

Emmert, C. J., and Gilkison, J., dissent.


## DISSENTING OPINION

EMMERT, C. J.—The danger of a court of review deciding cases contrary to well established precedent and principle is always imminent, and for that reason must be watched constantly if we would avoid the making of personalized law, which would be as changing as the changing personnel of the court. We should shun making the judiciary a governmental department of men and not of laws. This does not mean that our declaration of the common law should be as immutable as the laws of the Medes and Persians, for the rule of *stare decisis* is subject to the exception, based upon superior precedents holding that, when the reason for the rule ceases, the rule should cease. *A fortiori,* when there never was any reason for the rule in the beginning, it should be overruled. Our Bill of Rights, as well as the due process clause of the Fourteenth Amendment, are the

very negation of the philosophy that the end justifies the means, which is always the excuse used to establish or perpetuate the despotism of government. It destroys "equal justice under law." It is an unpleasant duty to note that the well established precedents of this court, based upon sound existing reason, no longer mean anything to this court. Nor for that matter do decisions of the Supreme Court of the United States mean anything, although we are bound to follow them as the supreme law of the land. This court should remember the history of the final disposition of the constitutional issue involving denial of representation by counsel in *Todd* v. *State* (1948), 226 Ind. 496, 81 N. E. 2d 530, 81 N. E. 2d 784. In an opinion by the writer of the prevailing opinion in the present appeal, which was concurred in by another member of the court who now concurs in denying relief to appellant, it was held the judgment of the trial court should be affirmed. Both members of the court who now dissent, by separate dissenting opinions called attention to the denial of the constitutional right to representation by counsel. Todd then filed his petition for a writ of habeas corpus in the United States District Court for the Northern District of Indiana. That court by memorandum opinion of September 26, 1949, properly held the judgment of conviction was void, since Todd had been denied his constitutional right to representation by counsel.[1]

Appellant's assignment of error, "That the order of the court denying appellant's petition for writ of error coram nobis is contrary to law," complies with Rule 2-40. The cases cited and discussed consider the denial

---

[1] The rule on exhaustion of remedies before instituting an action for a writ of habeas corpus in the U. S. District Court has been changed by Darr v. Burford (1950), 339 U. S. 200, 94 L. Ed. 511, 70 S. Ct. 587.

of appellant's constitutional rights to adequate and competent representation by counsel, both under Section 13 of Article 1 of the Constitution of Indiana, and the due process clause of the Fourteenth Amendment, and I cannot escape the conclusion that he was denied his constitutional rights under both provisions.

As late as December 1, 1949, this court in *Beard* v. *State*, 227 Ind. 717, 88 N. E. 2d 769, said, in passing upon denial of a constitutional right:

> "Although on appeal this court presumes the action of the trial court was correct, undisputed facts will be taken as true, and as said by Myers, C. J. in *Atkinson* v. *State* (1920), 190 Ind. 1, 6, 128 N. E. 433, 434: ' . . . the only course open to us is to pronounce judgment of law upon these facts.' See also *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. Rep. 29, *supra*." (p. 770)

Each of the three judges of the present majority opinion concurred without qualification.

On March 28, 1950, in *Abraham et al.* v. *State*, 228 Ind. 179, 91 N. E. 2d 358, this court declared the applicable law as follows:

> "The petition for the writ was placed at issue by the state filing an answer in general denial. At the hearing the verified petition was introduced in evidence and oral evidence was heard. Upon review of the evidence we do not weigh conflicting evidence nor determine the credibility of witnesses, but uncontradicted statements of fact in behalf of the petitioners will be taken as true. *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. Rep. 29; *Myers* v. *State* (1888), 115 Ind. 554, 18 N. E. 42; *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N. E. 220; *Cassidy* v. *State* (1929), 201 Ind. 311, 168 N. E. 18, 66 A. L. R. 622; *Kuhn* v. *State* (1944),

222 Ind. 179, 52 N. E. 2d 491; *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E. 2d 769.

"Upon the undisputed facts it becomes our duty to apply the law to the facts. *Atkinson* v. *State* (1920), 190 Ind. 1, 128 N. E. 433; *Vonderschmidt* v. *State* (1948), 226 Ind. 439, 81 N. E. 2d 782. Our practice in this respect is in accord with the federal rule. *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; *White* v. *Ragen* (1945), 324 U. S. 760, 65 S. Ct. 978, 89 L. Ed. 1348; *Tomkins* v. *Missouri* (1945), 323 U. S. 485, 65 S. Ct. 370, 89 L. Ed. 407; *Williams* v. *Kaiser* (1945), 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398; *Hawk* v. *Olson* (1945), 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; *Watts* v. *Indiana* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801."

In this case two judges did not participate, but one judge who now joins in the majority opinion, concurred without qualification. The principles involved in the present appeal are no different than the Abraham case.

The majority opinion concedes that appellant's allegations that he had no opportunity to confer with his counsel concerning the facts of his alleged offense and possible defenses thereto were not denied by the state, but reasons that the trial court was not bound to take these uncontradicted allegations of fact as true. There was no oral testimony given at the hearing. The majority opinion opens wide the door to the denial of every constitutional right which depends upon evidence for proof. Constitutional rights cease for want of a remedy.

The true cause for the result of the majority opinion is contained in its statement in the following language:

"As to whether the record reveals that appellant was not adequately represented, it would appear to us that the appellant was guilty as charged. He does not assert otherwise."

In the first place, the petitioner in rhetorical paragraph 10 of the verified petition, which was introduced in evidence, states:

> "The petitioner would show to the Court that he is not guilty of the offense for which he stands convicted and sentenced upon his plea of guilty, for the reason that he did not 'unlawfully, feloniously and burglariously' enter into the Mobil Filling Station of Howard J. Strickland in New Harmony, Indiana on or about the 28th day of March 1949 or upon any other date. That at most, petitioner could have been convicted of larceny in connection with the alleged theft of the goods of said Howard J. Strickland, and the conviction of this petitioner of said offense would be extremely doubtful in view of the illegal search of petitioner's automobile without a search warrant by the State Police officers as herein stated, the evidence thereby obtained being rendered not admissible for the failure of said officers to search said vehicle under a valid search warrant."

The decisions of this court as well as the Supreme Court of the United States have clearly held that the constitutional safeguards were for the protection of the guilty as well as the innocent. Judge Lairy in *Batchelor* v. *State* (1920), 189 Ind. 69, 84, 85, 125 N. E. 773, 776, with unanswerable logic, said:

> "It is suggested that the motion for leave to withdraw the plea and to be permitted to plead not guilty does not allege that appellant was innocent of the crime charged or that the crime was committed under such circumstances as would not justify the infliction of the extreme penalty of the law. The burden of making such a showing did not rest on appellant; it is enough for him to show that he was denied a right to which he was entitled under the Constitution. Our law is no respecter of persons. The rights of just and upright citizens are not more sacred in the eyes of the law than the rights of the poorest and meanest citizen of the state. The safeguards erected by the Constitution

are intended to protect the rights of all citizens alike. They protect the rights of the guilty as well as those of the innocent. The court cannot give its sanction to the conviction of any person accused of crime where the proceedings on which the judgment is based show the denial of a right to which the defendant was entitled under the Constitution. Such judicial sanction, in any case, would destroy the efficacy of the constitutional safeguards to protect the rights of all citizens of the state."

And until the Supreme Court of the United States overrules the reasoning of *Ex parte Quirin* (1942), 317 U. S. 1, 25, 63 S. Ct. 2, 9, 87 L. Ed. 3, 11, under the due process clause of the Fourteenth Amendment, we are bound to follow the law as therein stated by Chief Justice Stone that, "Constitutional safeguards for the protection of all who are charged with offenses are not to be disregarded in order to inflict merited punishment on some who are guilty. *Ex parte Milligan, supra,* 119, 132; *Tumey* v. *Ohio,* 273 U. S. 510, 535; *Hill* v. *Texas,* 316 U. S. 400, 406."

The holding of the majority that appellant had it peculiarly within his power to produce as a witness his attorney whose conduct he has attacked, and that his failure to do so justifies an inference against appellant, is contrary to prior precedents of this court and wholly fallacious. In *Dodd* v. *Reese* (1940), 216 Ind. 449, 24 N. E. 2d 995, 128 A. L. R. 574, this court properly held, that in a proceeding to set aside a judgment of adoption upon the ground that it was obtained by fraud participated in by the attorney for the adopter, that the attorney, although not made a party to the proceedings to set aside the judgment, had such an interest in protecting his professional reputation that it was error to overrule his petition to intervene as an adverse party, and that granting him the privilege to appear as *amicus curiae* did not cure the error.

Of course when a convicted defendant files a petition for writ of error coram nobis in which he attacks the professional conduct of his attorney on the ground that he was denied adequate and competent representation by counsel, the confidential privilege of his communications made to his counsel is waived just the same as the competency of a physician to testify as to the privileged communications is waived when the patient institutes an action for malpractice. This principle is squarely decided in *Fluty* v. *State* (1947), 224 Ind. 652, 71 N. E. 2d 565, in a learned opinion by my brother Gilkison. The court there said:

> "A majority of the court believe that the filing of this *coram nobis* action in the trial court was a direct attack against the professional integrity of the attorney, and gave him a right to defend his conduct as appellant's attorney. There can be no doubt, however, that when appellant took the witness stand and himself testified as to his recollections concerning the confidential communications between himself and his attorney, he thereby destroyed the confidential nature of the communications and by that act consented that the attorney might be a witness concerning the confidential matters that he, himself, had testified about. . . ." (pp. 658, 659.)

Appellant's counsel would have been an adverse witness, and if the state wished to deny appellant's uncontradicted allegations of fact with reference to his incompetent representation, it could have produced him as a witness, or have taken his affidavit and filed it as a part of the evidence at the hearing. Its failure to do so strengthens the inference that appellant's positive allegations of fact were true. The record of the questions and answers asked appellant at the time of his arraignment and plea of guilty fail as a matter of law to furnish any justification for sustaining the action of

the trial court. What did an ignorant layman of another state, only twenty-one years of age, who had never been in any serious trouble before, know as to whether or not he had been over-persuaded to enter a plea of guilty, and that it was done of his own free will and choice. A plea of guilty is not conclusive when constitutional rights are denied. Joseph Cardinal Mindszenty admitted guilt and confessed a charge of treason, but the free world knows judicial tyranny regardless of its form. The judicial inquiry, which properly goes behind the plea must be directed to the determination of what preceded the plea and how it was obtained. The accused must be advised by competent counsel as to his legal and constitutional rights before he is in a position to freely and understandingly enter the plea. *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389. A multiplication of authorities on this axiomatic proposition is unnecessary.

In *Hoy* v. *State* (1947), 225 Ind. 428, 440, 75 N. E. 2d 915, 920, in an opinion by Young, J., and concurred in by the writer of the prevailing opinion in the present appeal, where the trial court forced appellant to trial on the same day counsel was appointed, it was held that there had been a denial of the constitutional right to counsel. It was there said, "Little time could have been left for consultation and preparation for the trial by counsel. Adequate time for consultation and preparation was an essential as appointment of counsel." In *Rice* v. *State* (1942), 220 Ind. 523, 44 N. E. 2d 829, this court held it was reversible error to deny a motion for continuance and force the defendant to trial on a charge of rape, when counsel would only have approximately one-half day in which to prepare for trial.

If "adequate time for consultation and preparation" is essential before trial, it necessarily follows that ade-

quate time must be afforded and used if counsel is to be in any position to advise whether to stand trial or enter a plea of guilty. No one contends that an accused is entitled to the services of a Darrow or a Choate. Our profession has never made any claim of infallibility in either criminal or civil litigation. But we know from the many laborious hours that were spent by prior members of this court in writing the many cases on unlawful search and seizure, that such problems could not be adequately considered by any lawyer in fifteen minutes. The determination as to whether or not the state police had probable cause to search appellant's automobile of necessity would require considerable research. At the argument it was suggested by the present counsel for appellant that the building alleged to have been broken and entered was not in fact a building within the meaning of the statute on burglary in the second degree. The problem of included offenses was also presented in the charge of burglary in the second degree, since a jury would have the right to find appellant guilty of grand larceny or petit larceny. The appellant has the right to require the state to prove him guilty beyond a reasonable doubt of every material allegation of some offense charged, but he was not advised of this right. Before an accused can freely and understandingly enter a plea of guilty to a charge made he must be properly advised by his counsel, after counsel has made whatever investigation of the facts and law may be necessary in the particular circumstances. If the accused be in fact guilty, and in the honest and informed opinion of counsel the jury would return a verdict of guilty, counsel may properly so advise the accused, but the accused alone has the sole right to elect whether he will plead guilty or stand trial. The record discloses an entire absence of any attempt by counsel to give his "'entire

devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability.' " Canon 15, Canons of Ethics of the American Bar Association. See also Canons 4, 5 and 8. Appellant was at least entitled to the legal services that could be afforded by any second year law school student qualified to prepare a moot court case. · He did not even have that. Under the circumstances in this record, the payment of the $5.00 fee was a gross over-payment. The representation here was merely perfunctory, passive and casual. *Abraham et al.* v. *State* (1950), 228 Ind. 179, 91 N. E. 2d 358; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848; *Bradley* v. *State* (1949), 227 Ind. 131, 84 N. E. 2d 580; *Sanchez* v. *State* (1927), 199 Ind. 235, 157 N. E. 1; *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527. The facts in this record are much stronger for relief than either the Rhodes case or the Powell case. Therefore the conviction should have been set aside.

## DISSENTING OPINION

GILKISON, J.—I agree with the dissent of Emmert, C. J.

The majority opinion is based wholly upon an erroneous statement of law appearing in the opinion, thus: "As to whether the record reveals that appellant was not adequately represented, it would appear to us that the appellant was guilty as charged. He does not assert otherwise." This assumption of guilt by a court is, of course, contrary to the law of Indiana, which provides: "A defendant is presumed to be innocent until the contrary is proved." Section 9-1806, Burns' 1942

Replacement. *Ewbank's Indiana Criminal Law*, §§ 584, 585, 586 (2d Ed.). This statute and rule of law is but a partial implementation of the American idea of the personal dignity, immunity, safety and rights belonging to every individual as against any one who may assail them anywhere, anytime, even including the state and federal governments. Protection of these rights is guaranteed to every individual by both the state and federal Constitutions. With the exception of the majority opinion in this case neither the courts of this or any of our sister states have announced a doctrine of the assumption of guilt of a defendant by the courts, so far as I can find; neither have our federal courts or the United States Supreme Court announced such doctrine. On the contrary all have announced the distinctly American idea that "a defendant is presumed to be innocent until the contrary is proven." This doctrine must continue to be the controlling law in Indiana so long as we remain a Republic. In this situation the law that governs this court is well stated by Swaim, J. in *Kuhn* v. *State* (1944), 222 Ind. 179, 193, 52 N. E. 2d 491, thus:

> ". . . In the case of the defendant pleading guilty he has had no trial. By his motion to vacate the judgment of conviction and withdraw his plea he usually charges that he has been denied one or more of his constitutional rights. *It is the duty of the trial court and of this court to see to it that those constitutional rights are not improperly denied to a defendant charged with crime."* (My italics).

This is the law that must govern us in deciding the instant case, unless we now abandon the American idea of individual liberty, adopt the totalitarian philosophy and assume "that the appellant was guilty as charged" as stated in the majority opinion. Of course, if we now adopt the latter philosophy we can disregard all con-

stitutional rights and decide the case agreeable with our whim of the day. I cannot follow this plan.

It seems to me that the entire majority opinion from beginning to end is besmirched by the erroneous doctrine noted. It admits that appellant—a boy of twenty-one years—was badly manhandled by state policemen for three days from March 29 to April 1, 1949 during which time he was arrested without warrant and kept under complete control of the police both day and night without placing any charge against him. As soon as arrested he was whisked out of Posey County—where it is alleged the offense was committed—over four counties to a state police station sixty miles away where he was finger-printed, surrounded and questioned by armed state policemen, as a result of which a typewritten confession was procured. He was denied access to an attorney and to his parents, and was taken, (not "returned" as stated in the majority opinion) to the Posey County Jail March 31, 1949.

The affidavit was filed against appellant on March 30, 1949. On April 1, 1949 he was required to enter his plea, after he was permitted to talk to an attorney in the court-room for fifteen minutes. At the expiration of that time the attorney apparently felt qualified to advise his client to plead guilty—probably influenced by the unlawful conduct of the State policemen and the unlawfully procured confession, and apparently by the promise of a suspended sentence. It is quite inane for this court to intimate a belief that the State Police did not threaten to use the coerced confession against appellant. The taking of the confession under the prevailing conditions, was an unlawful threat to use it against him. That it was a powerful influence with appellant and his inconsiderate lawyer is apparent from the hasty plea of guilty then entered.

The majority opinion correctly states: "We have repeatedly said that the trier of the facts may not disregard or refuse to consider uncontradicted testimony which is all one way." (Authorities.) Then it proceeds with a page of sophism in an effort to destroy the legal principle that it pretends to recognize. The rule that should govern us is well stated by Richman, J. in *Kuhn* v. *State* (1944), 222 Ind. 179, at page 183, *supra,* thus:

"Frequently an issue of fact is submitted and decided upon verified complaints and answers or upon affidavits and counter affidavits. . . . *When so submitted uncontroverted facts appearing in the verified pleadings are treated as true* and the trier resolves conflicts as he would in considering oral testimony." (My italics).

The facts showing "that appellant's attorney did not advise him of his constitutional rights and that he failed adequately to represent the appellant" as stated in the majority opinion, were contained in appellant's verified petition and it was introduced in evidence. The majority opinion admits that the above quoted facts are in the evidence and that they are uncontradicted, uncontroverted and undisputed. This alone, is surely sufficient to destroy the reasons, if any, upon which the opinion must rest. Surely no court may lawfully disregard or refuse to consider uncontradicted testimony that is all one way. *Vonderschmidt* v. *State* (1948), 226 Ind. 439, 442, 81 N. E. 2d 782.

We cannot avoid knowing from the record that appellant was not adequately represented. From our knowledge of the constitution of the state and nation respecting the rights of an individual before the law and the many holdings of the courts with respect thereto, we judicially know that no lawyer anywhere or at any time could explain these constitutional rights to an

average twenty-one year old layman in fifteen minutes so that he would understand them. To assert to the contrary is necessarily to assert too much. Many weeks are used by trained teachers in our law schools to present these far reaching fundamental truths to young men and young women of high intelligence, and even then quite generally they are only partially understood. Sometimes we read opinions on these propositions as in the majority opinion, and we wonder.

The verified complaint directly charged that appellant's attorney did not advise him of his constitutional rights and failed adequately to represent him. In such a situation there is no presumption either in favor of or against the attorney, the appellant, or the state. It presented the facts for trial, without presumptions either way. *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 525, 79 N. E. 499; *Evansville, etc. R. Co.* v. *Berndt* (1909), 172 Ind. 697, 701, 88 N. E. 612; *Kilgore* v. *Gannon* (1916), 185 Ind. 682, 114 N. E. 446; *Minardo* v. *State* (1932), 204 Ind. 422, 427, 183 N. E. 548; but when it was introduced in evidence it became evidence in the case that the court could not ignore, but must consider. *Egbert* v. *Egbert* (1948), 226 Ind. 346, 352, 80 N. E. 2d 104.

What examination of the facts, the witnesses, the court, the jury, and prospective jurors, and of the law should an attorney make before advising as to a plea or engaging in a trial? In *Powell* v. *Alabama* (1932), 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct. 55, an appointment of attorneys for the defendants in a rape case at least six days before the day fixed for the trial (see *Todd* v. *State* [1948], 226 Ind. 496, 515, 81 N. E. 2d 784) the Supreme Court of the United States said that this was not sufficient time for the defendant "to advise with counsel and prepare his defense."

In *Bradley* v. *State; Taylor* v. *State* (1949), 227 Ind. 131, 136, 84 N. E. 2d 580, 582 this court with its present personnel unanimously held:

> "The fundamental right of a defendant in a criminal case to have competent counsel assist him in his defense carries with it as a necessary corollary, the right that such counsel shall have adequate time in which to prepare the defense." (authorities).

We then held that 65½ hours in which is included three nights and Sunday "was wholly insufficient for the attorneys to prepare adequately for the defense . . .," and that the allowance of this short time "amounted to a denial of due process of law as guaranteed by Amendment 14, § 1, of the Constitution of the United States" and to due course of law as guaranteed by Art. 1, §§ 12 and 13 of the Indiana Constitution.

If six days was insufficient time to prepare for trial in the Powell case, and 65½ hours was insufficient time to prepare in the Bradley, Taylor cases, what overweening sufficiency can be found in the fifteen minutes in which appellant's attorney had to prepare in the case at bar? It seems to me that the question carries its own answer. That his attorney did not ask for time sufficient to investigate the many things he should have investigated, before advising the plea indicates his lack of professional ability, his lack of recognition of his professional duties, his lack of experience and his total incapacity to render more than merely perfunctory service to appellant at the time he advised the plea. The trial court could not have been ignorant of these facts for its intrinsic record necessarily showed the appearance of the attorney for appellant not to exceed fifteen minutes before the plea was entered. With this situation before the trial court and before this court on the

record a single duty remains to be performed if we give force and effects to Art. 1, §§ 12 and 13 of the Constitution of Indiana and Section 1 of the 14th Amendment of the Constitution of the United States; and the statement in the majority opinion, that "if, taking into consideration these and other factors, the uncorroborated statements of this appellant did not carry conviction we think the court was entitled to disbelieve his assertions that his constitutional rights were not explained to him by his attorney," is quite absurd. This is especially true since there was no evidence to the contrary, and the trial court had neither duty nor authority to ignore it under the pretense of weighing the evidence. The statements of appellant referred to are fully corroborated by the trial court's intrinsic record. They are further corroborated by the failure of his erring attorney to appear and testify to the contrary. As shown by the dissent of Emmert, C. J. the attorney was adverse to appellant in this proceeding. It was the duty of the state, therefore, to produce the attorney's evidence if it would have been contrary to the so-called "uncorroborated" evidence of appellant. *East* v. *State* (1929), 89 Ind. App. 701, 704, 168 N. E. 28. See also authorities cited on this point by dissent Emmert, C. J. The fact that the state made no effort to produce this evidence when it was its duty and within its power to do so raises the presumption that had it done so this evidence would have been against the state and would have corroborated appellant's statement. This is compelling corroboration of appellant, and the authorities given in the majority opinion as follows: *Lee* v. *State* (1901), 156 Ind. 541, 60 N. E. 299; *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157, and *Carty* v. *Toro* (1944), 223 Ind. 1, 57 N. E. 2d 434 are in full support of appellant's position. They do not support the appellee

or the position stated in the majority opinion. I cannot imagine a case in which a party is required to place his adversary or his adversary's witnesses on the witness stand.

The majority opinion seeks to say that there is a difference in the legal effect of evidence produced, if the action to vacate the judgment and withdraw the plea is made by motion during the term at which the judgment was taken; instead of by a coram nobis proceeding instituted after the close of the term. So far as I can find there is no reason for this peculiar thought since each proceeding seeks the same end. However, this idea suggested by the majority opinion has been answered in *Irwin* v. *State* (1942), 220 Ind. 228, at pages 238, 239, 240, 41 N. E. 2d 809, thus:

> ". . . When a defendant has been sentenced for a crime upon a plea of guilty without having been accorded his constitutional rights, it will be assumed that the trial court was mistaken in the facts, since it cannot be conceived that, knowing the facts, the court would have proceeded to judgment."

> ". . . The petition must be filed in the court in which the judgment was rendered, and, whether it be designated a petition for writ of error *coram nobis* or a motion to vacate the judgment, the right to relief will be determined from the facts alleged and proven. '. . . The relief that may be administered by the one form of procedure is identical with that in the other.' "

Thus it appears that the force and effect of the evidence is exactly the same no matter which way the action is brought.

The evidence recited in the majority opinion conclusively shows that all appellant's attorney ever did for him and the other two boys charged with him was to make a plea for clemency. This plea contains approxi-

mately 216 words. There is nothing in the evidence indicating that he gave any advice of any kind or character, but out of the consultation whatever it was about, came the plea of guilty.

No matter from what angle the case may be considered the fundamental fact remains that appellant had an attorney for a period of only fifteen minutes immediately before his plea. For three days immediately prior he had been a prisoner in the exclusive custody of the State Police. Their wrongful conduct toward appellant has been noted. At the time of his plea he was still under their influence, and his attorney made no effort to release him from that influence by asking for a continuance for an investigation. On the contrary he served the plans of the State Police.

I feel sure appellant has been denied his rights under the constitutions of both the state and nation as noted, and that the judgment should be reversed, that a lawful trial may be had and a lawful judgment may be rendered.

NOTE.—Reported in 93 N. E. 2d 184.