ULREY *v.* ULREY.

[No. 28,923.   Filed June 26, 1952.]

64

*C. W. H. Bangs,* of Huntington, for appellant.

*Lee M. Bowers, Arthur J. Palmer* and *Bowers, Feightner & Palmer,* all of Huntington; and *William L. Burger,* of Fort Wayne, for appellee.

DRAPER, J.—Appellee filed an amended complaint for limited divorce and an application for temporary support and suit money.

Appellant answered in admission and denial under the rules and in a second paragraph of answer admitted that the parties had been married, but alleged they were divorced by the decree of the First Judicial District Court of the state of Nevada on September 28, 1951. The answer alleged in detail the proceedings leading up to that decree.

Appellee replied that the appellant never acquired a bona fide residence in Reno, Nevada, and that any judgment there rendered is void because the appellee practiced a fraud on said court in claiming a residence there; that because of the fraud of appellee the court in Nevada never acquired jurisdiction, and its decree is void, and therefore not entitled to full faith and credit under §1, Art. 4 of the United States Constitution.[1]

The court overruled appellant's contention and entered an order directing the payment of temporary

---

[1] "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

support and attorney's fees. This appeal is from that order.[2]

The evidence is conflicting. That most favorable to the appellee indicates that the parties were married on April 14, 1905, at North Manchester, Indiana. Appellee is sixty-six years of age, in poor health, not employed and wholly without money, property or income. She has lived in Huntington, Indiana, for twenty-six years last past. She has never been in the state of Nevada. On or about the 23rd day of August, 1951, the sheriff of Huntington County, Indiana, served her with a summons in the divorce case filed against her by the appellant in Nevada, and the sheriff read and delivered to her a copy of the summons and complaint for divorce. She never appeared in that action, either in person or by counsel.

Prior to July 5, 1951, the appellant had lived in Huntington, Indiana, for many years. On that date he left Huntington saying he was going to Chicago. He actually went to Reno, Nevada. He arrived in Reno on July 6th, filed his complaint for divorce on August 20th, received his decree on September 28th, and remarried the same day. He returned to Indiana with his new wife on October 7, 1951, after a short visit in Detroit, Michigan. He returned to Huntington, Indiana on October 15th.

Before leaving Huntington the appellant paid room rent in advance on his living quarters in that city. He took a leave of absence from his employment, not resigning therefrom until October 15th, 1951, at the request of his employer. He retained his employer's

---

[2] Whether the facts alleged in the second paragraph of answer may properly be asserted in defense of a petition for temporary support and suit money is a question not raised and therefore not considered or decided.

cash register keys during his absence. On September 10, 1951, he wrote a friend in Huntington, Indiana, to the effect that he expected to be "home" by the middle of September, but might not make it until October, at which time he would get out a certain report for his employer. While in Reno, appellant roomed and boarded at a guest house there, occupying one of fourteen rooms, some of which were occupied by roomers who were getting divorces.

Attested and certified copies of the pleadings and proceedings leading up to and including the final decree of divorce in Nevada were introduced in evidence. The evidence discloses appellant's ability to pay reasonable support money and attorney's fees.

It must be regarded as settled that an application by the wife for temporary support and for money with which to pay attorneys to prosecute her action ■ is proper in cases of this kind, and the court may hear and determine an application therefor before the trial of the main action. *Tracy* v. *Tracy* (1943), 221 Ind. 590, 50 N. E. 2d 662; *Brown* v. *Brown* (1946), 224 Ind. 523, 69 N. E. 2d 246; *Brown* v. *Brown* (1945), 223 Ind. 463, 61 N. E. 2d 645.

It is not asserted that the allowance is unreasonable in amount. The appellant says the appellee is not his wife; that the decree of divorce granted in Nevada terminated the marriage relationship; and he is, therefore, under no duty to support the appellee. The question is whether the Nevada decree must be accorded full faith and credit in Indiana.

We are of course bound by U. S. Const., Art. 4, §1, and laws enacted pursuant thereto.[3] It is also pro-

[3] ". . .

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be

vided by statute in this state that "A divorce decree in any other state, by a court having jurisdiction thereof, shall have full effect in this state. Burns' 1946 Replacement, §3-1229.

The Nevada decree could not be collaterally assailed by the appellee in Indiana if the Nevada court had acquired jurisdiction by personal service upon her in that state, or if she had appeared in that case and had admitted or contested the issue of the appellant's domicil. *Cook* v. *Cook* (1951), 342 U. S. 126, 96 L. Ed. 94, 72 S. Ct. 157; *Sutton* v. *Leib* (1951), 342 U. S. 402, 96 L. Ed. 352, 72 S. Ct. 398; *Rice* v. *Rice* (1948), 336 U. S. 674, 93 L. Ed. 957, 69 S. Ct. 751; *Sherrer* v. *Sherrer* (1948), 334 U. S. 343, 92 L. Ed. 1429, 68 S. Ct. 1087, 68 S. Ct. 1097, 1 A. L. R. 2d 1355; *Coe* v. *Coe* (1948), 334 U. S. 378, 92 L. Ed. 1451, 68 S. Ct. 1094, 68 S. Ct. 1097, 1 A. L. R. 2d 1376; Anno. 1 A. L. R. 2d 1385.

But as she neither appeared nor was so served the Nevada decree is subject to attack in Indiana, and it is vulnerable here if the Nevada court was without jurisdiction to grant it. *Williams* v. *North Carolina* (1945), 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092, 157 A. L. R. 1366; *Rice* v. *Rice, supra; Sutton* v. *Leib, supra; Cook* v. *Cook, supra.*

---

proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. June 25, 1948, c. 646, 62 Stat. 947." USCA, Tit. 28, §1738."

The burden of undermining the decree of a sister state "rests heavily upon the assailant." *Williams* v. *North Carolina, supra* (325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092, 157 A. L. R. 1366); *Esenwein* v. *Pennsylvania* (1945), 325 U. S. 279, 280-281, 89 L. Ed. 1608, 1609, 1610, 65 S. Ct. 1118, 157 A. L. R. 1396; *Cook* v. *Cook, supra; Sutton* v. *Leib, supra.* Here the appellee challenged the decree on the ground that the Nevada court was without jurisdiction because the appellant had not established his domicil in that state in accordance with the requirements of Nevada law, despite a finding by the Nevada court that he had in fact done so. The court below had authority to and did investigate and decide that question in this contested action. See cases cited *supra.*

"Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil." *Williams* v. *North Carolina, supra.* "Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance." Ibid. Bodily presence in a place, unaccompanied by an intention to live there permanently, or at least indefinitely, will not serve to make that place the domicil. 17 Am. Jur., Divorce and Separation, §250, p. 279; 27 C. J. S., Divorce, §76, p. 646. A person can have but one domicil at a time. To work a change of domicil the fact and the intent must concur. One must remove to the new residence without the intention of returning to the old as such. *Culbertson* v. *The Board of Commissioners of Floyd County* (1876), 52 Ind. 361; *Hayward* v. *Hayward, Admr.* (1917), 65 Ind. App. 440, 115 N. E. 966, 116 N. E. 746. If, as the evidence would strongly indicate, the appellant went to Nevada solely for the purpose of obtaining

a divorce, intending all along to return to his "home" in Indiana, he did not acquire a domicil in Nevada. *Williams* v. *North Carolina, supra.*

It is true the appellant testified he went to Nevada intending to make that state his permanent residence. The rule is well established that we will not weigh conflicting evidence. We may say, however, that the evidence seems to us to preponderate heavily in favor of the appellee. The finding of the court is amply sustained by the evidence. Whatever the status of these parties may be in Nevada does not presently concern us. In Indiana they are husband and wife. The decision of the court is not contrary to law.

Judgment affirmed.

NOTE.—Reported in 106 N. E. 2d 793.