28 N.J. Super. 165 (1953)
100 A.2d 315
STELLA D. BROWN, PLAINTIFF-RESPONDENT,
v.
EDWARD I. BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1953.
Decided October 27, 1953.
*168 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Vincent P. Biunno argued the cause for appellant (Messrs. Lum, Fairlie & Foster, attorneys; Mr. Abe D. Levenson, on the brief).
Mr. David Goldstein argued the cause for respondent (Messrs. Goldstein & Novogrod, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant appeals from an order of the Chancery Division adjudging him in contempt for disobeying a temporary injunction by securing a Nevada divorce.
The parties were married in 1916 and lived together in New Jersey until 1930. In that year plaintiff brought an action for separate maintenance and obtained a final decree which directed the defendant to pay $50 per week support and maintenance for her and the three children of the marriage. The decree was modified in 1939 to provide for weekly payments of $35. Defendant left New Jersey the latter part of August 1948, went to Reno, Nevada, and soon after his arrival there instituted suit for divorce. The wife was personally served in New Jersey with the summons and complaint in the Nevada suit on October 28, 1948. Within the 30-day period allowed her to answer, and on November 13, 1948, she filed a verified complaint in the Chancery Division seeking an injunction against further prosecution of the Nevada suit. On the same day the Chancery Division entered an order continuing an ad interim restraint and ordering defendant-husband to show cause on November 26, 1948 why an injunction should not issue. On the return day, no answer or affidavits having been filed or appearance entered by him, the court issued a temporary injunction restraining him and his solicitors from proceeding further in the Nevada action. Nonetheless defendant, with knowledge of the New Jersey restraint, proceeded in the Nevada courts and obtained a divorce decree on December 6, 1948.
*169 While defendant was in New Jersey on a visit in 1951 he was served with plaintiff's notice of motion to hold him in contempt for violating the temporary injunction of November 26, 1948.
Defendant filed an answer in the matrimonial injunction action setting forth, among other things, that he had changed his domicile and residence from New Jersey to Nevada prior to the institution of that action; that he continued to have his domicile and residence in Nevada until after the completion of the divorce proceedings, and that the Nevada decree was entitled to full faith and credit, was presumed to be valid and was a defense to the contempt proceedings.
Pending the hearing in the contempt proceedings, defendant was served with a petition and notice of motion to fix the amount of alleged arrearages due plaintiff under her 1930 separate maintenance decree, as modified. He was also served with a notice of motion for an order for a writ of ne exeat and for counsel fees and suit monies. Defendant countered with a notice of motion for an order dismissing the matrimonial injunction action on the ground that it had been abandoned by plaintiff through her failure diligently to prosecute the same, and for an order directing that proceedings on plaintiff's petition to fix the amount of alleged arrearages be stayed until determination of the matters then before the court.
We limit ourselves to the contempt proceedings brought in the matrimonial injunction action of 1948. After taking the testimony of defendant and his witnesses (plaintiff offered no proofs), the trial court adjudged defendant guilty of contempt. Brown v. Brown, 19 N.J. Super. 432 (Ch. Div. 1952). On appeal, this court, in Brown v. Brown, 24 N.J. Super. 198 (App. Div. 1953), held that the injunction was invalid unless the husband was domiciled in New Jersey when he brought the Nevada suit. In remanding the cause the court said:
"Here the trial court made no finding as to the domicile of the husband or as to the validity of the Nevada divorce decree. Without *170 such a finding, there can be no valid order adjudging the husband in contempt for violation of such a restraining order." (at page 203)
There were further proceedings following this reversal, but no additional testimony was taken, both counsel stating they had no more evidence to offer. Plaintiff moved for findings of fact and also for an order the same as the one reversed, stating that the application would be based upon the "papers, proceedings of record, and testimony" in the matrimonial action as embodied in the appendix on the appeal just decided. The trial court thereupon made findings of fact and decided that defendant was a domiciliary of New Jersey when he attempted to obtain his Nevada divorce, and that his decree was fraudulently obtained. The court then entered the order under appeal adjudging defendant guilty of contempt in willfully violating the restraining order of November 26, 1948, by deliberately taking a final decree of divorce in the above action on December 6, 1948 after being apprised of the restraint and while it was still in full force and effect. The order further directed defendant "to proceed with reasonable diligence to present the truth" to the Nevada court and "in good faith to urge" that its divorce decree be set aside and declared null and void. The contempt order was stayed by the trial court pending appeal.
In passing upon the validity of the more recent contempt order we have before us the decision of this court on the earlier appeal that no adjudication of contempt could be made without a finding as to defendant's domicile or as to the validity of the Nevada decree, because the initial power to restrain the Nevada proceedings itself depended on the existence of a New Jersey domicile in the husband. Domicile is the determinant. It cannot be that the Nevada decree is valid, and at the same time that defendant is in contempt. The two are inconsistent and would require diametrically opposed findings on the question of domicile.
The Nevada decree presumptively is entitled to full faith and credit under U.S. Const., Art. IV, § 1. *171 Williams v. North Carolina (first case), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). The legislative policy expressed in N.J.S. 2A:34-22 (formerly N.J.S.A. 2:50-35) must give way to the requirement that under the full faith and credit clause recognition must be given to the decree of another state even though the ground of divorce was not one recognized here. Peff v. Peff, 2 N.J. 513, 520 (1949); Hubschman v. Hubschman, 140 N.J. Eq. 284, 286 (E. & A. 1947); Giresi v. Giresi, 137 N.J. Eq. 336, 340 (E. & A. 1945).
In Williams v. North Carolina (second case), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1944), the court held that a local judgment which refuses recognition to one rendered in the divorcing state
"must, however, satisfy our scrutiny that the reciprocal duty of respect owed by the States to one another's adjudications has been fairly discharged, and has not been evaded under the guise of finding an absence of domicil and therefore a want of power in the court rendering the judgment * * *. The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant." (at pages 233-234)
Before a judgment can be held to satisfy this requirement, it must appear that:
1. "* * * proper weight was accorded to the claims of power by the court of one State in rendering a judgment the validity of which is pleaded in defense in another State";
2. "that the burden of overcoming such respect by disproof of the substratum of fact  here domicil  on which such power alone can rest was properly charged against the party challenging the judgment";
3. "that such issue of fact was left for fair determination by appropriate procedure"; and
4. "that a finding adverse to the necessary foundation for any valid sister-State judgment was amply supported in evidence * * *." (at page 234)
The more critical and specific tests are those numbered 2 and 4. Applying the four tests to the challenged order of the Chancery Division, we must conclude that the finding of the trial court that defendant was domiciled in New Jersey *172 and that the Nevada decree was invalid was erroneous and must be reversed.
In the first place, the court failed to give proper weight to the "claim of power" in the Nevada court to render the divorce decree pleaded in defense to the contempt proceedings brought by the wife. That decree contained a specific finding that "the plaintiff for more than the period prescribed by law has been and now is a bona fide resident of, and has his domicile in the County of Washoe, State of Nevada." The opinion below does not disclose that the trial judge gave any consideration or weight to this claim of power. The court does not mention the finding in the Nevada decree, or the husband's testimony that he was questioned on the point of domicile in the course of the Nevada proceedings.
The second test laid down by the second Williams case was not met. The trial court failed to charge against the wife, who challenged the Nevada decree, the burden of overcoming the respect due that decree by "disproof of the substratum of fact"  that is, domicile. Once the defense of the Nevada decree had been raised, it was for the wife to offer and establish by proof that the husband was not domiciled in Nevada, in order to overcome the prima facie validity which the full faith and credit clause accords that decree. In Pahy v. Pahy, 107 N.J. Eq. 538, 540 (E. & A. 1931), the court held that, conceding the proofs raised a suspicion that the purpose of the husband in going to Nevada was to obtain a divorce and that he had no intention of becoming a permanent resident there, mere suspicion was not enough to nullify the Nevada decree. That decree was final "unless it is made to appear that the court was led to this conclusion by fraud perpetrated upon it by the complainant; and that fraud is a fact that will never be presumed, but must always be clearly and convincingly proved." And see Ballentine v. Ballentine, 112 N.J. Eq. 222, 225 (E. & A. 1933); Schneider v. Schneider, 103 N.J. Eq. 149, 150 (Ch. 1928). The Chancery Division opinion nowhere mentions that the burden of disproving *173 domicile in Nevada was on plaintiff, or that she failed to submit any evidence on that question. Nor does it state that the proof against defendant's claimed domicile in Nevada was clear and convincing, that being the measure of the burden, and not merely suspicion.
The third of the tests is that the fact issue "was left for fair determination by appropriate procedure"  a requirement intended as a precautionary measure against any attempt at pretense in according full faith and credit and prima facie validity to the Nevada decree. The language of the court in the second Williams case is another way of saying that New Jersey must give full faith and full credit, and not something less. It has already been remarked that whatever the legislative policy of New Jersey, originally expressed in section 33 of the Divorce Act of 1907 (now N.J.S. 2A:34-22), it must give way to the provision of the Federal Constitution. Peff v. Peff, 2 N.J. 513, 520 (1949). Examination of the opinion of the Chancery Division shows that the court did not accord respect to the Nevada decree, imposed no burden of proof upon plaintiff who challenged that decree, and had before it no adequate proof offered by plaintiff. The court cannot therefore be said to have left the factual issue of domicile for "fair determination by appropriate procedure." Instead, it chose to disbelieve the proofs adduced by defendant. It is clear that the trial judge considered defendant's Nevada domicile false and that it was incumbent upon him to present proof to the contrary.
We approach the fourth test laid down in the second Williams case: Was the finding that defendant was not domiciled in Nevada, and therefore the Nevada decree invalid, "amply supported in evidence." Our consideration of the entire record shows that it fails to meet this requirement. In reaching this determination we give full consideration to the affidavits presented in support of plaintiff's motions. The affidavit and supplemental affidavit of her attorney merely relate to the temporary restraint he had obtained and his efforts to perfect service upon defendant. *174 Plaintiff's own affidavit is equally devoid of anything that would disprove defendant's claim of domicile in Nevada. On the other hand, we have the testimony of defendant and his witnesses, the purpose of which was to establish facts tending to prove that his domicile in Nevada was genuine. Even were we to disbelieve the testimony adduced by defendant, that would not help plaintiff. It is not enough that defendant's evidence, wholly supporting the foreign jurisdiction if believed, be disbelieved. Such a position leaves the required prima facie validity of the Nevada decree and its finding of fact as to domicile neither strengthened nor weakened.
The Nevada decree was before the trial court, having been presented as part of the moving papers. In these circumstances, with no proof whatsoever offered by the challenging plaintiff, it cannot fairly be said that she has met her burden by clear and convincing proof.
The trial court quoted from Lawler v. Lawler, 2 N.J. 527, 532 (1949). The case is clearly distinguishable because not only did the wife there offer substantial proof, but the husband himself freely conceded that he had lied to the Nevada court as to his intention to make Nevada his domicile.
At the argument, counsel advanced the view for the first time that there was no need for plaintiff to present evidence disproving defendant's domicile in Nevada, because defendant's evidence in itself disproved that fact. We cannot agree.
Defendant had for a long time suffered from an arteriosclerotic condition of the spinal column. His physician recommended that he abstain from too great activity, either mental or physical, and go to live in a more suitable, warmer climate. New Jersey, with its extremes of weather, was not suitable, and the doctor suggested that defendant leave the State. Defendant, then living in Asbury Park, told friends of his intention to wind up his affairs and go to Nevada. Defendant testified that he went to Nevada because he thought its drier, warmer climate would be *175 better for his health. His intention was to settle down and look for a small business. He freely admitted that he also went there for the purpose of obtaining a divorce. He intended to remain out West for the rest of his life, and never to return to New Jersey to live here again. None of this testimony as to what defendant had in mind and as to his intentions in leaving New Jersey was questioned on cross-examination.
The fact that defendant has never returned to live in New Jersey is uncontroverted. Similarly, the evidence adduced by defendant to show what he did and what happened after leaving New Jersey was in no way questioned. The proof is that he took all of his belongings with him when his brother drove him out to Nevada; he took out a Nevada license for his automobile, opened a bank account, had his personal effects insured, and had a telephone installed at his address; he looked about for a small business, like a rooming house or tourist court, and engaged an agent to advertise for such a business, but without success because the prices asked were too high (he had only $3,500 to invest).
After living a while in a hotel and then with a friend, he rented a small house in November. After obtaining his divorce decree on December 6, 1948, he married his business partner who had flown out to Nevada for that purpose. The two settled down in the rented house. The winter of 1948-9 was an exceptionally severe one, with heavy snows and intense cold which affected defendant's legs so much that he had to use crutches for a while. On January 13 the couple decided to go to Florida, leaving many of their effects behind in the place they continued to rent. While in Florida they decided that it would be better for defendant's health to live there. Accordingly, they returned to Reno in April 1949, stayed about a month, and then packed up their belongings and returned to Florida where they have resided ever since.
We conclude, therefore, that even on the basis of defendant's evidence the determination of the Chancery Division *176 adverse to the Nevada decree was not "amply supported in evidence." Williams v. North Carolina (second case), 325 U.S. 226, 234, 65 S.Ct. 1092, 89 L.Ed. 1577 (1944). Nor did plaintiff "clearly and convincingly" prove (Pahy v. Pahy, 107 N.J. Eq. 538, 540 (E. & A. 1931)) that fraud was perpetrated upon the Nevada court  that defendant had not left New Jersey animus non revertendi and gone to Nevada animus manendi.
The circumstances of this case are similar to those found in Cope v. Cope, 123 N.J. Eq. 190 (E. & A. 1938), Ballentine v. Ballentine, 112 N.J. Eq. 222 (E. & A. 1933) and Pahy v. Pahy, 107 N.J. Eq. 538 (E. & A. 1931). These cases were decided at a time prior to the two Williams v. North Carolina cases, when the legislative policy expressed in section 33 of the Divorce Act of 1907 (N.J.S.A. 2:50-35, now N.J.S. 2A:34-2) was strongly adhered to. The courts in those cases held that the Nevada domicile had not been disproved, nor the Nevada decree shown to be a nullity.
The trial court put some stress on the fact that defendant, among other reasons, went to Nevada to obtain a divorce. But a husband may, as a citizen of the United States, choose not only to reside in Nevada but to institute and maintain actions in its courts and under its laws, including its divorce laws. The vital consideration always is absolute good faith in the taking up of such residence and the intention of remaining there. Peff v. Peff, 2 N.J. 513, 521 (1949); Eberle v. Somonek, 24 N.J. Super. 366, 373 (Ch. 1953), affirmed 27 N.J. Super. 279 (App. Div. 1953). It is not correct to say that if one of the purposes of a husband's going to another state is to obtain a divorce, that ipso facto his intent is fraudulent. That can only be so if the underlying assumption is true, namely, that he did not intend to make that state his domicile.
Although, as noted, the opinion of the trial judge nowhere states just where the court placed the burden of proof, it is apparent that it was placed upon defendant. The court disbelieved his testimony, made no reference to *177 plaintiff's failure to offer any proof, and made no mention of the effect to be given the Nevada decree prima facie. We note that the court cited Cromwell v. Neeld, 15 N.J. Super. 296 (App. Div. 1951), an inheritance tax case turning on domicile. The question of domicile was there in issue, and no prior determination or judgment of a sister state, entitled to full faith and credit, was involved. As presented, the fact question was up for initial determination, and the court properly ruled that the burden of proof under the circumstances rested on the party who asserted a change of domicile. The rule of the Cromwell case does not apply here.
It is clear from the record that the theory pursued by plaintiff was based on the premise that domicile was not relevant, nor was the validity of the Nevada decree. Accordingly, no attempt whatsoever was made on her behalf to introduce any testimony at all bearing on these questions. As a matter of fact, plaintiff's counsel stated to the court that he "studiously avoided" these very questions.
A word as to the procedure followed in the trial court. The matter came before the court on motion to hold defendant in contempt. Contempts other than those committed in facie curiae are to be prosecuted on notice which, among other things, shall state the essential facts constituting the contempt charge (R.R. 4:87-2, formerly Rule 3:80-2), and that was the procedure adopted here. The person charged may serve an answer or an answering affidavit, and that was done. Since the charge is prosecuted on notice, it would seem the proceeding would be governed by the normal rule that the moving party has the burden of establishing the charge. And since such contempt, not being in facie curiae, depends upon proof of facts not appearing of record, it would also seem that the taking of evidence would be controlled by R.R. 4:44-4 (formerly Rule 3:43-3), which permits the court to hear the matter on affidavits made on personal knowledge setting forth only facts which are admissible in evidence and to which the affiant is competent to testify, or on oral testimony, or both. *178 Evidence was taken, as permitted by this rule, but the wife made no attempt to establish the essential facts disproving the Nevada domicile.
We are of the opinion that the better practice in this case would have been to determine the issue at final hearing in an orderly procedure, on due notice and on oral proofs taken on both sides. Cf. Test v. Test, 131 N.J. Eq. 197, 201 (E. & A. 1942). This would have concluded the matrimonial injunction proceedings begun back in November 1948.
Our observation is strengthened by what was said by plaintiff's counsel when he appeared before the court on the contempt motion and two others awaiting determination. He stated that insofar as there could be a final hearing, there had been one in the cause, and further, that he was "perfectly willing if there is to be a final hearing to let the final hearing be on the evidence already in." Although our determination will undoubtedly mark the end of plaintiff's prosecution of the matrimonial injunction action  and this was admitted by counsel in the course of the argument  the better practice would have been for the trial court itself to have determined the matter on final hearing.
The order under appeal is reversed.