IRONS *v.* IRONS.

[No. 29,894. Filed November 22, 1961. Rehearing denied February 16, 1962.]

*John B. Cochran, John B. King,* and *Baker & Daniels,* of counsel, all of Indianapolis, for appellant.

*George L. Pepple, Pepple, Yoder & Ainlay,* of counsel, of Goshen, *D. Russell Bontrager,* and *Bontrager & Spahn,* of counsel, of Elkhart, for appellee.

LANDIS, C. J.—Appellee wife brought suit for divorce against appellant husband in June 1956 in the circuit court of Noble County, Indiana. A summons was issued but not served. On August 27, 1956, appellee obtained an order for publication as to appellant and on October 22, 1956, after publication appellee took a judgment for divorce and alimony by default. The judgment was set aside on appellee's motion, after appellant had filed motion for new trial and praecipe for a transcript in order to appeal and also to prevent an execution sale under the default judgment.

Thereafter the action was venued to the Elkhart Circuit Court where the cause was tried upon the issues formed by appellee's complaint and appellant's answer which set up a decree of a court of the state of Nevada granting a divorce to appellant on September 21, 1956, to which appellee filed a reply alleging the Nevada decree was procured by fraud, that appellant was not in fact a bona fide resident of that state and it was not therefore entitled to full faith and credit.[1] The court below granted a divorce to

---

1. See Art. 4, §1, of the Constitution of the United States providing that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. . . ."

It is also provided by statute in this state that "A divorce decreed in any other State by a court having jurisdiction thereof, shall have full effect in this State." Acts 1873, ch. 43, §24, p. 107, 112, being Burns' Indiana Statutes §3-1229 (1946 Repl.).

appellee and held that the Nevada decree was void and not entitled to full faith and credit.[2] The court also awarded custody of the minor child to appellee, entered a support order, awarded to appellee certain real estate held by the parties as tenants by entireties and also certain personal property in appellee's possession and ordered appellant to pay $7,500 for attorneys' fees of appellee.

Appellant assigns error in overruling his motion for new trial and contends on this appeal that the court below erred in refusing to give full faith and credit[3] to the Nevada decree of September 21, 1956, which had granted the divorce to appellant.[4] Appellee was served by the Nevada court with nonresident summons but did not appear in the Nevada action.

Appellant cites the statement of Chief Justice Marshall in *Hampton* v. *M'Connel* (1818), 3 Wheat. 234, 235 L. Ed. 378, 379, that ". . . the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States,

---

2. The court's special finding No. 14 in this respect was "That the defendant herein was not a bona fide resident of Washoe County, State of Nevada when he filed his suit in the Second Judicial District Court of the State of Nevada on August 24, 1956 for divorce from the plaintiff herein, nor was he such a bona fide resident of said county and state on September 21, 1956 when a decree of divorce in his favor was entered by said Court, nor at any time prior thereto, but only became such a resident after said decree. . . ."

3. Art. 4, §1, Constitution of the United States, *supra*.

4. In view of conflicting statements in the briefs and in the transcript it is questionable what, if any, issues were before the trial court, and therefore before us on appeal, as to the divisibility of the Nevada decree, should it be deemed valid to adjudicate the status of the marriage of the parties. Recent cases dealing with various facets of divisible divorces, viz: support, alimony, custody and property rights are: *Vanderbilt* v. *Vanderbilt* (1957), 354 U. S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456; *Estin* v. *Estin* (1948), 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, 1 A. L. R. 2d 1412; *Weber* v. *Superior Court* (1960), 53 Cal. 2d 403, 2 Cal. Rptr. 9, 348 P. 2d 572.

which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States."

Appellant also cites the U. S. Supreme Court decision in the first Williams case, *Williams* v. *North Carolina* (1942), 317 U. S. 287, 303, 63 S. Ct. 207, 215, 87 L. Ed. 279, 288, 143 A. L. R. 1273, 1283, which overruled *Haddock* v. *Haddock* (1906), 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, and held that ". . . when a court of one state acting in accord with the requirements of procedural due process alters the marital status of one domiciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter. . . ."

Appellant further cites the opinion of said Court in the second Williams case, *Williams* v. *North Carolina* (1945), 325 U. S. 226, 232, 65 S. Ct. 1092, 1096, 89 L. Ed. 1577, 1583, 157 A. L. R. 1366, 1371, for the proposition that only the jurisdictional facts upon which a judgment was founded may be considered in determining whether full faith and credit must be extended to such judgment, the Court saying: ". . . the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicile is a jurisdictional fact. . . ."

Appellant contends upon the basis of this authority, the only issue subject to inquiry under the full faith and credit clause is whether the Nevada court had jurisdiction of the divorce proceeding before it, and that in turn involves in this case only an inquiry whether appellant was a bona fide domiciliary of

Nevada at the time he brought his action there and obtained his Nevada divorce.

Appellee asserts however the Elkhart Circuit Court was entitled to take into consideration the fact that appellant failed to apprise the Nevada Court of the pendency of appellee's suit in the state of Indiana in determining whether appellant practiced a fraud on the Nevada court.

We do not believe the Indiana case was pending in a legal sense against appellant at the time of the prosecution of the Nevada divorce action. An action is deemed commenced in this state by the filing of a complaint and the issuance of summons or the first publication of notice to a nonresident defendant. Burns' Indiana Statutes §2-802, (1946 Repl.), being Acts 1881 (Spec. Sess.), ch. 38, §55, p. 240. Here there was no personal service and the first publication of the nonresident notice was on August 29, 1956, but the suit for divorce in the Nevada court had previously been instituted on August 24, 1956, and nonresident service by summons was had on appellee by reading it to her in Indiana on August 27, 1956.

It is therefore apparent that the Indiana suit was not pending at the time of the institution of the Nevada action for divorce (See *Wood et al.* v. *Bissell* (1886), 108 Ind. 229, 9 N. E. 425) and it cannot therefore be properly contended that such subsequent action should have been brought to the attention of the Nevada court.

The crucial inquiry in determining whether full faith and credit must be given by the Indiana Court to the decree of the Nevada court leads to a consideration of whether appellant was a bona fide

domiciliary of Nevada at the time he brought his action there and obtained his Nevada divorce.

The law is well settled that the burden of undermining the decree of a sister state rests heavily upon the assailant. *Ulrey* v. *Ulrey* (1952), 231 Ind. 63, 69, 106 N. E. 2d 793, 795; *Williams* v. *North Carolina* (1945), *supra*, 325 U. S. 226, 233, 65 S. Ct. 1092, 1097, 89 L. Ed. 1577, 1584, 157 A. L. R. 1366, 1371; *Esenwein* v. *Commonwealth* (Penn. 1945), 325 U. S. 279, 280, 65 S. Ct. 1118, 1119, 89 L. Ed. 1608, 1610, 157 A. L. R. 1396.

We do not believe it necessary or appropriate here to go behind this well established rule to examine the reasons for its existence except to say that to permit decrees of sister states to be overturned upon a small quantum of proof would be to emasculate the constitutional provision requiring each state to give full faith and credit to the judicial proceedings of every other state.

In the case before us, in order to determine whether there is substantial evidence to sustain the decision of the trial court upsetting the decree of the Nevada court, we must consider the undisputed evidence introduced in the trial court bearing on the question of domicile and in case of conflict that favorable to appellee.[5]

The parties were married in Acton, Marion County, Indiana, on March 28, 1934. They lived in Kendallville, Indiana, for the last fifteen years immediately prior to their separation on May 28, 1955. Appellant husband at the date of trial was 54 years of age and

---

5. Although a reviewing court, in reviewing the sufficiency of the evidence to sustain a finding or judgment, will not pass on fact questions or weigh conflicting evidence, it will determine if there is substantial evidence to sustain the finding or judgment. West's I. L. E., Appeals, ch. 17, §571, p. 485.

there were three daughters born to the marriage, aged 22, 19 and 11 years.

As early as 1948 appellant and appellee discussed moving away from Indiana because of appellant's health and arthritic condition. A Ft. Wayne doctor advised him to move to Arizona and as a result his wife wrote numerous places in the west and southwest with reference to the weather and climate.

In the late winter and spring of 1954 appellant went from Indiana to Florida and his wife was with him part of the time. He wanted to build a house there but his wife objected. He did however buy a lot. Thereafter he went to Mexico, and again in the fall and early winter of 1954 he was in Mexico where appellee left him and came back to Indiana.

In March of 1955 appellant and appellee again went to Florida, appellee returning in April and appellant in May. The relations between the parties progressively deteriorated until May 28, 1955, when the final separation took place. There is no conflict in the evidence concerning the state of appellant's health, the investigation of places to live in the west and southwest, the fact of the trips and the fact that appellant never again resided at the family home in Kendallville, Indiana, after the separation on May 28, 1955.

In the summer of 1955 after the separation, appellant informed his associates in the Indiana businesses he had started in 1952 that he was retiring from active management in the businesses because he would be gone from Indiana for health reasons and henceforth would only be available for consultation. However appellant remained an officer and resident agent of the corporations. In September 1955 appellant left Indiana and went to Lake Worth,

Florida, where he rented an apartment. He procured a Florida driver's license, and filed there a formal declaration of domicile and citizenship; he obtained a library card at West Palm Beach, Florida, which he used, and he sought business opportunities in Florida in the gasoline business.

Appellant was physically present in Florida from September 1955 to January 1956 most of the time except for a short trip to New England. The evidence discloses efforts on appellant's part to conceal his whereabouts from his family until appellee discovered in January he was at Lake Worth, Florida. Appellee introduced evidence he had been associating with another woman. Appellee wrote appellant a letter telling him she was instructing her Florida counsel to oppose any divorce, following which he returned to Indiana to confer with appellee. However, it appeared appellant had not consulted a Florida attorney regarding a divorce. Appellant became ill while in Indiana and returned to Florida in about three weeks. He came to Indiana again in May for his daughter's high school graduation, returning to Florida for medical and psychiatric treatment. After being in and out of hospitals appellant left Florida June 13, 1956, because of his health and, according to his testimony, not intending to return to Florida to make his home. He testified the climate in the hurricane season and later in the winter which he had previously not experienced was too humid, and also he was unable to find business opportunities there.

At the time appellant left Florida he wrote his daughter in Indiana that he was going to travel in the west for the summer. Appellant flew to Chicago where he picked up his car, driven there according to instructions given his daughter, and then motored to

the west and southwest, visiting various cities and investigating their climates and inquiring about business opportunities. Appellant visited Laguna Beach, California, on July 4, and San Francisco on July 9, where he found the climate chilly and foggy. Under date of July 9 appellant wrote a letter to one of his daughters mailed from San Francisco on August 10, stating that he was writing from San Francisco and that he would be leaving that city in a day or two and that he didn't know just where he would go or pause next. On July 11, he drove to Reno, Nevada, ostensibly to see if that place had climate and surroundings favorable to his health so as to be a satisfactory place for him to make his home.

After looking around Reno for a day he testified he decided he wanted to settle down there, and four days later moved into an apartment, in the meantime staying at the Hotel El Cortez. When registering he gave his address as Lake Worth, Florida. He established a bank account in a Reno bank, and joined and became an officer in a Reno church. He registered with two employment agencies and obtained a Nevada driver's license. After renting the apartment in Reno he first learned that appellee had on June 14, 1956, filed the instant divorce action in Indiana, and thereafter he consulted an attorney in Reno and determined upon the divorce action there.

The Nevada decree was obtained by appellant on September 21, 1956, and thereafter he became a member of the board of his church and a member of its finance committee. He secured a position as consultant to a trucking concern for a month in the fall of 1956. He applied for numerous other jobs in Reno but was unable to procure them because of his health. In January 1957 he registered as a voter in

Reno, paid poll tax, his personal property tax and a license fee, and in May 1958 renewed his Nevada operator's license.

In the summer of 1957 he flew to Hawaii for a vacation of two weeks, some months later developed angina pectoris, and about Christmas time went to Acapulco, Mexico, for four months. His Reno apartment was sublet and he rented an apartment in Mexico at the request of his daughter who stayed with him for a time.

The trial of the divorce action in the Elkhart Circuit Court commenced on June 4, 1958, and on July 3 was continued because of a coronary occlusion had by appellant while on the witness stand. He was hospitalized until July 14 in Goshen, Indiana, and was in Mexico in late October where he received further medical treatment. He returned to Reno in November 1958, where he remained following his coronary attack except for these trips and his being in Indiana on account of this divorce action.

Appellee introduced in evidence certain corporate and tax reports filed in Indiana on behalf of appellant negativing appellant's intentions to establish a Nevada domicile.

Appellee's exhibits 1 and 2 are the Annual Domestic Corporation Reports of 1955 and 1957 for Carateria, Inc., and listing appellant as a resident agent and a director and giving Kendallville, Indiana, as his address. Appellee's exhibit 52 is a photostat of appellant's Federal Income Tax Return for 1957 showing the tax to have been paid at the Director's office at Indianapolis. Appellee's exhibits 71 and 72 are Indiana Gross Income Tax Returns for 1956 and 1957 for appellant listing his address in 1956 as being

U. S. Highway 6, West, Kendallville, Indiana, and his address for the 1957 return as being Reno, Nevada.

Mr. Schirmeyer, a certified public accountant, who prepared appellant's income tax returns testified that during 1955 he had no specific knowledge as to appellant's whereabouts or his address other than Kendallville, Indiana. He forwarded appellant's mail to Mr. Norman Miller in Elkhart, and that situation continued from the latter part of 1955 to early 1956. In connection with one of the annual corporate reports for 1955 (exhibit 10) which showed appellant's post office address as resident agent to be Kendallville, Indiana, Mr. Schirmeyer stated he didn't know what appellant's address was at that time and thought appellant was moving around so much that he (the accountant) was confused. He further testified that he knew some nine months before the filing of the corporate tax report (exhibit 2) in September 1957, that appellant's residence was in Reno, Nevada, and not in Indiana, and he simply used an Indiana address where mail would be forwarded to appellant.

The accountant testified that although appellant informed him of his change of residence to Reno, he advised appellant to use an Indiana business address on his Federal Income Tax Return for 1957 (exhibit 52) under the provision permitting filing at the source of principal income because it would be more convenient for the accountant. The accountant further testified that at the time the Indiana Gross Income Tax Returns were prepared for 1956 and 1957 he knew of appellant's change of residence.

We are unable to conclude upon the basis of the above evidence which is either without conflict or in

case of conflict which is favorable to appellee, that there is substantial evidence in the record sufficient to sustain the decision of the trial court upsetting the determination by the Nevada court that appellant was a domiciliary of that state.

As stated in the second Williams case (*Williams* v. *North Carolina*, 1945, *supra*, 325 U. S. 226, 233, 65 S. Ct. 1092, 1097, 89 L. Ed. 1577, 1583, 157 A. L. R. 1366, 1371) ;

" . . . The challenged judgment must, however, satisfy our scrutiny that the reciprocal duty of respect owed by the States to one another's adjudications has been fairly discharged, and has not been evaded under the guise of finding an absence of domicile and therefore a want of power in the court rendering the judgment.

" . . . The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant. . . ."

The case before us is quite similar from a factual point of view to the cases of *Brown* v. *Brown* (1953), 28 N. J. Super. 165, 100 A. 2d 315, and *Comm. ex rel. Lorusso* v. *Lorusso* (1959), 189 Pa. Superior Ct. 403, 150 A. 2d 370.

In the Brown case the court found a valid domicile where the husband went to Nevada for reasons of health, to settle down and look for a small business, and to get a divorce. He took all his belongings with him, obtained a Nevada license for his automobile, opened a bank account, had a telephone installed, and engaged an agent to help find a small business. It is interesting to note that the divorce was held valid even though the husband moved to Florida, apparently because of his health, within several months after receiving his divorce.

In the Lorusso case the Nevada divorce was held valid where a physician moved from Pennsylvania to Nevada, obtained a divorce, passed the medical exam, obtained employment in a Nevada hospital, obtained a Nevada driver's license, paid Nevada personal property and poll taxes, joined the Chamber of Commerce, and lived in Nevada for more than one year before the validity of the Nevada decree was contested.

The facts are clearly distinguishable from *Ulrey* v. *Ulrey, supra,* where the Indiana court held no bona fide domicile was established in Nevada. There appellant arrived in Reno, Nevada, on July 6, 1951, filed for divorce on August 20, 1951, received his decree on September 28, 1951, remarried on the same day, returned to Indiana on October 7, 1951. The appellant had taken a leave of absence, did not quit his job, rented his living quarters in Indiana before going to Reno, kept his employer's cash register key and indicated in a letter that he would be "home" by the middle of September.

In the case before us, the evidence as to the retention by appellant of several offices and positions in Indiana corporations and as to the filing of tax and corporation reports in Indiana was not substantial evidence to support the decision below setting aside the Nevada judgment. In fact, the failure of the record to support the lower court's decision upsetting the Nevada decree is indicated by the lower court's finding that while appellant was not a bona fide resident of Nevada at the time he filed and obtained his Nevada divorce, he nevertheless became such a resident (of Nevada) after said decree (see note 2). There was no substantial evidence to indicate a change of domicile after the Nevada decree which did not exist prior thereto.

We are constrained to hold in this case that the finding of the court below was not sustained by sufficient evidence and was contrary to law.

Judgment reversed with directions to grant appellant's motion for new trial.

Jackson and Bobbitt, JJ., concur; Achor, J., concurs in result; Arterburn, J., dissents with opinion.

## DISSENTING OPINION

ARTERBURN, J.—I regret that I cannot agree with the reasoning of the majority opinion in this case. I disagree on two basic grounds—first, I feel the majority opinion has weighed the evidence on appeal, when the only duty here is for us to review the evidence most favorable to the finding of the trial court. It is said that "The law is well settled that the burden of undermining the decree of a sister state rests heavily upon the assailant." Be that as it may, in a civil action the burden is always heavily upon the plaintiff to prove his case (by a preponderance of the evidence) in the trial court. Yet on appeal, we must review the evidence most favorable to the sustaining of the trial court's judgment, regardless of the burden of proof in the trial court.

We further point out that the statement that "the burden of undermining the decree of a sister state *rests heavily* upon the assailant" (our italics) has no substantial reason for its existence. So far as we can discover, it was plucked out of thin air and used for the first time by Justice Frankfurter in *Williams* v. *State of North Carolina* (1945), 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366, without any authoritative support. In *Ulrey* v. *Ulrey* (1952), 231 Ind. 63, 106 N. E. 2d 793 the phrase was merely repeated.

To say the burden "rests heavily" on a party should mean no more than the general rule that a party has the burden of proving his case by a preponderance of the evidence in the trial court. Upon appeal, however, we should not (as is done here) reexamine the evidence to determine if the "preponderance" is with the party having the burden of proof. The determination of that question rests *solely in the trial court.* We, on appeal, accept only the evidence most favorable to the sustaining of the trial court's decision, and if we find there is any evidence to support the decision, we must affirm it. I feel under the principles applicable, the judgment of the trial court is sustained by sufficient evidence.

There is a second reason why I cannot agree with my colleagues in the majority opinion. This case not only involves the dissolution of the marriage status of the parties, but also the settlement of certain property, support and contractual rights, that grow out of a marriage.

Appellant states in his brief, one of the issues:

" . . . to be resolved upon this appeal is, . . . assuming that this Court holds that the Elkhart Circuit Court was required to give full faith and credit to the Nevada Decree, whether the Elkhart Circuit Court had any power thereafter in this action to award alimony, to dispose of Indiana property formerly held by appellant and appellee as tenants by entireties, to award attorneys' fees to appellee and to provide for the support and custody of a minor child."

I feel there has been a failure to recognize clearly that a divorce action is not solely an action in rem, but is a mixed action involving rights in personam as well. The question is, is a state's legal power over the marital status on *constructive service* sufficient to

destroy the legal duties to furnish support to an abandoned spouse, to make a fair division of the property, and to fix the custody of children, when the abandoned spouse and children are still domiciled in another state (the last martial domicile)? Ought we to allow the court of a sister state on constructive service, with no personal jurisdiction over the other spouse or the children, not merely to disolve the marital relationship (and permit a remarriage) but also to free that spouse from the economic duties of support, to make a fair division of the property acquired during the marriage and to fix the custody of the children? Does the full faith and credit clause of the United States Constitution require such a broad and extended application so as to cover rights which are normally considered *personal* rights, the subject of *personal* actions where *personal* service is necessary to acquire jurisdiction, as distinguished from in rem actions? The hardships in these cases have frequently been pointed out.

" . . . The problem becomes acute when the other spouse is a wife who has been abandoned by the husband on grounds not recognized as the basis for divorce by the last marital domicil. In cases of this kind the wife is often without adequate means to appear in the other State and defend the action; if she does do so and the court there finds that the husband has acquired a *bona fide* domicil in that State, that finding will be conclusive on her. The question reduces itself to this: shall the social policy of the last marital domicil yield to that of the husband's new domicil, not only on the question of the husband's ability to acquire a new wife but also on that of the cessation of a duty of economic support?" 18 Ind. L. J. 165, p. 181.

The case of *Haddock* v. *Haddock* (1906), 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867 was a denial of this

power to the husband's new alleged domicile. The facts of the *Williams Case, supra,* presented no such problem as to what becomes of the personal obligations of the husband for support, division of the property, etc. It is conceded that the full faith and credit clause does not apply to personal actions unless *personal* service is obtained and jurisdiction thereby acquired over the opposite party. There is no reason why the marital status of the parties may not be split off from the personal obligations of support, division of property, etc. that are owed personally to the other spouse by the husband, and those be settled in accordance with the social policy of the State where the other spouse has retained a continued domicile.

This appears now to be the trend of the thinking of the United States Supreme Court in more recent decisions after rendering some awkward decisions in this field of the law in the past. In *Estin* v. *Estin* (1948), 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, where the jurisdictional extent of a Nevada divorce obtained upon constructive service was considered, the court, in holding that a judgment for support in New York was not thereby nullified, said (at p. 545):

> "But the fact that marital capacity was changed does not mean that every other legal incidence of the marriage was incidentally affected."

The court further stated:

> " . . . That is an attempt to exercise an in personam jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. A judgment of a court having no jurisdiction to render it is not entitled to the full faith

and credit which the Constitution and statute of the United States demand. (Cases cited)

"The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern."

This opinion was later amplified in *Vanderbilt* v. *Vanderbilt* (1957), 354 U. S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456, in which the court stated (p. 418) :

"In *Estin* v. *Estin*, 334 U. S. 541, this Court decided that a Nevada divorce court, which had no personal jurisdiction over the wife, had no power to terminate a husband's obligation to provide her support as required in preexisting New York separation decree. The factor which distinguishes the present case from *Estin* is that here the wife's right to support had not been reduced to judgment prior to the husband's *ex parte* divorce. In our opinion this difference is not material on the question before us. Since the wife was not subject to its jurisdiction, the Nevada divorce court had no power to extinguish any right which she had under the law of New York to financial support from her husband. It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant."

I further believe the present opinion permits the full faith and credit clause of the Constitution to override the due process clause and the clause against impairment of the obligation of contracts. Due Process under the Constitution does not permit the destruction of personal obligations created by contract, tort or otherwise, without personal service and jurisdiction acquired thereby. It has been well said:

" . . . Whether a proceeding is in rem or in personam is determined by its nature and purpose, and by these only. A proceeding in personam is a proceeding to enforce personal rights and obligations brought against the person and based on jurisdiction of the person, although it may involve his right to, or the exercise of ownership of, specific property, or seek to compel him to control or dispose of it in accordance with the mandate of the court. In a proceeding in personam the court acts upon its jurisdiction over the person. In fact, the chief value of the distinctions between actions in this respect is in the determination of the sufficiency of the service of process on the defendant." 1 Am. Jur., Actions, §44, p. 435.

Support is a personal property right, for the loss of which (as by negligence of a third party) one is entitled to an action for damages. Due process will not permit the adjudication or destruction of such a right or obligation in an action based solely on constructive service.[1] Likewise the contractual obligations resulting from a marriage may not be impaired under the Constitution by divorce legislation of another state when operative only on constructive service.

Because of the social injustices arising from these so-called "migratory divorces", our conscience will always be stung if we permit the full faith and credit clause of the Constitution to override and take dominance over other clauses in the Constitution for the protection of social injustices. It is legally wrong

---

1. It is interesting to note that if the due process clause is involved, the federal courts do not consider whether or not the full faith and credit clause compels them to accept the adjudication of a state court in a criminal case. The federal court has no hesitancy in a habeas corpus proceeding to collaterally attack a state court's conviction and free a state prisoner, regardless of the state adjudication. Full faith and credit for judgments is just as important in criminal cases as in divorce cases, if not more so. It is difficult to understand why there should be a lopsided respect for it in the latter instance and none in the former. 12 Am. Jur., Constitutional Law, §705, p. 379.

to assume that a sister state may, upon *constructive service,* dissolve the marriage status and also take over jurisdiction of the *personal obligations* existing between the parties and dissolve them when they are so personal that under no stretch of imagination can they be considered the subject of in rem actions. I think the trial court having personal service on the appellant-husband properly assumed jurisdiction in this case to fix the support obligation of the husband under the marriage contract, which was personal, and also to fix the property rights of the parties, particularly the real estate, the situs of which was in Indiana, as well as the custody of the children. Nevada had no jurisdiction based on constructive service to make such an adjudication.

I would affirm the judgment of the trial court.

### ON PETITION FOR REHEARING

LANDIS, J.—Appellee has filed petition for rehearing, and from the brief in support thereof it appears the only substantial question here raised by appellee is whether our previous opinion handed down November 22, 1961, was in error in the determination it made from the evidence of the facts upon which the opinion was based.

In passing on appellee's petition for rehearing, we believe it appropriate to state here that it is not our province as a reviewing court to consider whether the practice of obtaining so-called ex parte out of state divorces, by persons who have spent much of their married life in this state, is good or bad for the litigants or society in general. Certainly many arguments could be levelled against the propriety of such divorces. If a change in our substantive law in this respect is desired, resort should be had to the

state or national legislatures, which have a wide area of discretion in this field, so long as they act within constitutional bounds.

Courts, however, in performing the judicial function ascribed to them, are called upon to determine controversies, including divorce actions, according to recognized legal principles and the trial court and this Court are governed thereby. We shall now proceed to a consideration of the legal aspects of the petition for rehearing.

As stated in our previous opinion, in order to ascertain if there was substantial evidence to sustain the trial court's decision upsetting the decree of the Nevada court, we considered the undisputed evidence introduced in the court below bearing upon the question of domicile, and, in case of conflict, that favorable to appellee.

Appellee on rehearing objects to our considering the undisputed evidence of appellant-husband to determine whether there was evidence in the record to sustain the trial court's decision upsetting the Nevada decree, contending the trial court had a right to reject such evidence, citing: *Schmittler* v. *State* (1950), 228 Ind. 450, 93 N. E. 2d 184; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116. We have no quarrel with the rule cited in these cases but desire to point out that we did not consider the undisputed evidence of appellant-husband *in order to reverse,* but in order to ascertain if there was sufficient evidence *to sustain* the trial court's decision upsetting the Nevada decree. In the case of *Ulrey* v. *Ulrey* (1952), 231 Ind. 63, 106 N. E. 2d 793, the husband's undisputed testimony

undoubtedly had just this effect as portions of it were of significance in indicating the husband's intention to return to Indiana after obtaining the decree in Nevada.

Appellee's contention is entirely without merit, for if we completely ignore the undisputed evidence of appellant-husband, to which appellee objects, we have only the evidence as to appellant's retention of interests in some corporations in Indiana and his filing of corporate and tax reports in this state. This evidence we held in our earlier opinion was insufficient to invalidate the Nevada court's determination of domicile.

It is important to recall that in the court below, the burden was not upon appellant-husband to sustain the Nevada decree, but rather upon appellee-wife to introduce evidence sufficient to entitle the Elkhart Circuit Court to determine the previous Nevada proceedings were invalid because of lack of jurisdiction. Unless that showing was made, the Elkhart Circuit Court had no authority to overturn the Nevada decree and to try the divorce proceedings on the merits over again. Not only is a prior adjudication by a court of general jurisdiction presumptively valid until set aside because of some invalidity, but a decree of a sister state under the U. S. Constitution[1] is entitled to full faith and credit unless the decree is affirmatively shown by the facts to be invalid because of the violation of some legal or equitable principle affecting the court's authority or jurisdiction to act.

As previously indicated and as stated in our earlier opinion, the retention by appellant of interests in

---

1. Art. 4, §1 of the Constitution of the United States.

some Indiana corporations, and the filing of corporate and tax reports in Indiana, did not in our judgment amount to substantial evidence which would support the decision below setting aside the previous adjudication as to domicile by the Nevada court.[2] In fact appellee does not now on rehearing specifically contend that such evidence was sufficient to rebut appellant's acquisition of a domicile in Nevada as held by the Nevada court.

It follows we must conclude, as we have in the previous opinion, that the decision of the court below was not sustained by sufficient evidence.

The last specification of the petition for rehearing is that the Court failed to give a decision in writing of a substantial question presented by appellee's brief, to-wit: whether appellant in his original brief had complied with Rule 2-17 of this Court. This technical question appearing in the petition for rehearing is not mentioned whatever in the argument section of appellee's brief on rehearing. While the rules do not require briefs to be filed in support of the petition for rehearing, if briefs in support thereof are filed, we believe it only reasonable to conclude petitioner has waived questions not discussed in the briefs on rehearing.

With regard to the property, custody and related rights of the parties, we have heretofore made reference in a footnote to recent decisions discussing the in rem aspects of divisible divorces, and as no question has been raised on rehearing regarding them, we

---

2. The general rule is well settled that for a change of domicile to be effected a person need only acquire a residence or home in a particular place with intention to remain there, coupled with an intention not to return to the former domicile. West's 11 I. L. E., Domicile, §4, p. 6.

do not believe any further discussion of such matters is necessary or appropriate here.

The petition for rehearing is overruled.

Jackson and Bobbitt, JJ., concur.

Achor, C. J., concurs in result with opinion.

Arterburn, J., dissents without opinion.

### CONCURRING OPINION ON PETITION FOR REHEARING

ACHOR, C. J.—Inasmuch as I heretofore concurred in the result of the majority opinion, without writing an opinion in support of my position in the case, and inasmuch as in many respects I am also in agreement with the principles of law stated but not the conclusion of the dissenting opinion written by Arterburn, J., and inasmuch as it appears from the petition for rehearing that the opinions, as written, have not, to the satisfaction of the appellee, resolved the issues of law or the effect thereof, as applied to the facts of this case, it, therefore, seems appropriate that I make this statement of clarification in support of my concurrence in the result of the majority opinion.[1]

My concurrence is based upon the following considerations:

*One:* This is not an ordinary appeal in which this court may look only to the facts most favorable to and in support of the decision of the trial court, from which this appeal is taken. In this case we are confronted with the fact of *two judgments* for divorce involving the same parties, which decrees were entered by two courts of competent and concurrent juris-

---

1. Ind. Const. art. 7, §5.

diction. The first decree in order of time was granted by the Second Judicial District Court of the State of Nevada; the second by the Circuit Court of Elkhart County, Indiana. This is the unique circumstance under which this court is called upon to determine which of these two judgments must be honored.

*Two:* In making our decision, we do not consider whether the period of domicile required by the law of Nevada is more or less desirable, from a sociological standpoint, than is the law in Indiana. It is not contended that the Nevada law is basically immoral or contrary to natural law and therefore voidable outside the jurisdiction of the state. Therefore, for the purpose of this appeal the period of domicile prescribed by the Nevada law is not an issue in the case. Rather, since the Nevada judgment is first in point of time, our inquiry into this aspect of the case is limited to consideration as to whether the Nevada judgment is valid under the law of that state. 12 Am. Jur. Constitutional Law §708, 15 C. J. S. Conflict of Laws §4(c), 4(b). *State* v. *Gateway Mortuaries, Inc.* (1930), 87 Mont. 225, 230, 287 P. 156, 157, 68 A. L. R. 1512, 1515; *Swann* v. *Swann* (1884), C. C. Ark., 21 F. 299.

In deciding this case, the problem which we must resolve is this: By what standard of proof may this court review the evidence in the case before us without violating the rules of appellate procedure by which we are governed, and at the same time give the full faith and credit to the Nevada judgment which is prescribed by the United States Constitution? The majority opinion relies upon a statement made by Justice Frankfurter in the case of *Williams* v. *North Carolina* (1945), 325 U. S. 226, 233, 65 S. Ct. 1092, 1097, 89 L. Ed. 1577, 1584, 157 A. L. R.

1366, 1371, that, under the circumstance here present, "the burden of undermining the decree of a sister state rests heavily upon the assailant." *Irons* v. *Irons* (1961), 242 Ind. 504, 178 N. E. 2d 156, 158.

As observed in the dissenting opinion by Arterburn, J. the above statement by Justice Frankfurter cites no authority. It does not adequately explain the reason in support thereof. Nor does it enunciate the method by which the rule can be applied with dependability in the appellate process. However, in my opinion the rule enunciated, although inadequately stated, is consistent with the result which must be reached if full faith and credit is to be accorded to the prior judgment of a sister state affecting the same subject matter and the same parties.

Very little authority is cited as to the method by which this court, as a court of appeal, can, on the one hand, fulfill its constitutional obligation to give full faith and credit to the prior judgment of a sister state and, at the same time, adhere to the ordinary rules of appellate procedure which limit our consideration of the evidence to that most favorable to the appellee.

In order to resolve this problem, it seems necessary that we apply the applicable principles of law to an analogous situation which would exist if we were dealing with two courts of concurrent jurisdiction within the state of Indiana. Under such circumstance, by what standard of proof would we on appeal consider the evidence in an action which purported to abrogate a prior judgment in a different court affecting the same parties and the same subject matter? Here, too, we would be required to give to the judgment first in time the full faith and credit to which it was entitled.

If the judgment first in time were attacked directly under our two year statute [§3-1224, Burns' 1946 Repl.], then we would consider the sufficiency of the evidence as in an ordinary appeal since under such circumstance the court which rendered the original judgment would have been given the opportunity and responsibility of either setting aside or affirming the action originally had in that court. However, in event of an indirect attack [in a different court] upon a prior judgment, which is prima facie res judicata, of the issues adjudicated in a subsequent action, the necessity of a different standard of proof on appeal is apparent. Under such circumstances there is reason why the judgment first in point of time must be permitted to stand, unless the evidence in the second proceedings is so conclusive as to establish the invalidity of the first judgment as a matter of law. It would seem that this is comparable to the heavy "burden of undermining the . . . decree [of a sister state]," to which Justice Frankfurter eludes. Any lesser rule regarding the burden of proof assumed by a party who attempts to indirectly re-litigate the same subject matter between the same parties, would result in confusion and chaos with respect to the final determination of all litigation.

When we apply the standard of proof, stated above, to the facts in this case, we are bound in our decision by the fact that here there is substantial, if not overwhelming, evidence in support of the fact that the appellant had established his domicile in the state of Nevada before prosecuting his action for divorce in that state. It is true that he had not changed his business address for certain purposes to his new domicile, but these facts are not sufficient to compel a conclusion contrary to that reached by the Nevada

court with respect to appellant's domicile in that state. For this reason the evidence heard in the Elkhart County Court, which is now before us on appeal, is not sufficient to abrogate the Nevada decree for divorce. The judgment in the Elkhart Circuit Court was, therefore, erroneous.

A question is presented as to the effect of the Nevada divorce with regard to the property rights of the parties. Although the Nevada decree was binding upon the parties as to their marital status, the judgment in that proceedings, having some of the characteristics of a decree *in rem* and not being a decree *in personam* is not controlling of the property rights of the parties in this state. This principle of divisibility is considered with approval in both the majority and the dissenting opinions. In this I also concur.

NOTE.—Reported in 178 N. E. 2d 156. Rehearing Denied. 180 N. E. 2d 105.